## SMITH BROS. GRAIN CO. v. WINDSOR & STANLEY. (No. 8184.)

(Court of Civil Appeals of Texas. Galveston. April 13, 1922. Rehearing Denied June 1, 1922.)

1. Sales ⊚―38(4)—Not necessary for representations or warranty of agent to be incorporated in written order for goods.

It is not necessary for the representations and warranty of the agent of vendor to be incorporated in the written order for goods.

2. Sales ⊚―257—Warranty in consideration of a price above market price held valid.

In a contract for the sale of cane seed, the parties could agree that in consideration of an increase over the market price under the ordinary conditions the seller would warrant the fertility of the seed.

3. Sales ⊚―273(4)—Sale of seed as good, sound seed for planting purposes impliedly, warranted fertility.

Where cane seed were sold expressly and solely for planting purposes under the positive representation that they were good, sound, sorghum seed for planting purposes, a warranty that they were fertile was implied.

4. Sales ⊚―442(3)—Measure of damages for breach of warranty of seed held to be the difference between resale price and contract price.

Where cane seed sold proved unfit for planting purposes for which they were warranted and were sold as feed, the measure of damages was the difference between the amount obtained on such sale and the contract price.

5. Appeal and error ⊚―870(3)—Right to review action of trial court on plea of privilege waived by failure to appeal from order.

Under Acts 35th Leg. (1917) c. 176, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 1903), the overruling of defendants' plea of privilege to be sued in the county of their residence, cannot be sustained, for the reason that they did not prosecute their appeal from that order of the trial court before going to trial upon the merits of the cause.

Appeal from District Court, Leon County; Carl T. Harper, Judge.

Action by Windsor & Stanley against the Smith Bros. Grain Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Joe H. Seale, of Centerville, and Smith & Smith, of Fort Worth, for appellant.

W. D. Lacey and M. L. Bennett, both of Normangee, for appellee.

GRAVES, J. Appellants complain of a judgment for $1,071 awarded to the appellees as damages for what the trial court found to have been a breach by appellants of a contract on their part to deliver to the appel-lees at Normangee in Leon county, Tex., a car of sorghum seed.

The cause was heard by the court without a jury, and as a basis for the recovery so allowed there were found, in substance, among others not deemed material enough to the purposes of this statement to call for specific mention, these facts:

(1) The contract of sale, made on behalf of appellants by their duly authorized resident agent at Normangee, was partly written and partly oral, consisting of a mutually signed order for the goods, which showed upon its face that it did not evidence the entire agreement, but when that was otherwise supplied was shown to call for 200 sacks of red top sorghum seed at the agreed price of $1,250, 50 sacks each of orange and amber sorghum seed at the agreed price, respectively, of $275 and $250, and verbal representations by the agent to the purchasers that the seed would be "good, sound, fertile sorghum seed for planting purposes of the 1918 crop."

(2) These representations were made prior to the consummation of the contract as an inducement to enter into it, had that effect, and caused the appellees to pay a cent per bushel more for the seed than they could have bought them for on the open market without such warranty.

(3) This local agent at Normangee "was authorized by Smith Bros. Grain Company to warrant and represent said sorghum seed to be good, sound sorghum seed for planting purposes of the 1918 crop, and that the same were purchased from the defendant within the knowledge of defendants to be used solely for planting purposes."

(4) "That by good, sound sorghum seed for planting purposes of the 1918 crop was meant such seeds as were fertile and would germinate when planted, unless prevented by some outside and extraneous matter or element."

(5) The full contract price for the shipment was paid by appellees at a bank in Normangee by their honoring a draft on them for the amount, to which a bill of lading for the goods was attached, they not inspecting the seeds before accepting them, although it was customary and usual in the seed business to allow that privilege, because of their relying solely on the representation and warranty of the grain company that the same would be "good, sound sorghum seed for planting purposes of the 1918 crop."

(6) The purchasers, prior to paying the draft, received from the grain company an invoice for the goods which, among others, contained this recitation: "Our field seeds are bought with care, every precaution being taken to furnish our customers with seeds correctly named and of productive quality, but we in no manner or in any sense guarantee crops from same."

(7) The 200 sacks of red top were totally unfit for planting purposes and had to be sold for feed at the reasonable market price therefor at a loss to appellees of $950. The 50 sacks of orange seed were likewise not as represented, but were badly damaged, and had to be so sold at a discount as to bring $121 less than they

⊚―For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

cost appellees, thereby casting upon them a further loss in that sum and making their total loss the $1,071 for which the judgment was entered in their favor:

(8) While, among dealers in cane seed, the custom generally was for buyers to be allowed the privilege of inspection before payment—a recitation to which effect appeared in this bill of lading—and for the sellers not to warrant the fertility or productivity of the seed, the special contract in this instance superseded such usages.

[1] Conclusions of law followed to the effect that it was not necessary for the representations and warranty of the agent to be incorporated in the written order for the goods, that "by good, sound, sorghum seed for planting purposes of the 1918 crop was meant that the seeds were fertile and would germinate if planted under proper conditions," and that the special contract so made by their agent was binding upon appellants, and rendered them liable for the loss as found.

After a careful examination of the statement of facts, we conclude that the evidence was sufficient to support each of the findings enumerated. They are accordingly adopted here. Nor, so thinking, are we able to find any fault with the stated legal deductions the court drew from them.

Under these conclusions, it becomes unnecessary to indulge in a seriatim discussion of the various assignments of error attacking the findings of either kind.

[2] There was nothing to prevent the parties from going beyond the usual and customary way of carrying out a transaction for the sale and purchase of such cane seed, and by special contract to agree that, in consideration of an increase over the market price under the ordinary conditions, the seller would warrant the fertility of the seed; that is precisely what the facts justified the court below in finding was done here. T. L. Massey testified that he paid one cent per bushel more than the general market price at the time of the contract, while the agent of appellants, who made the contract for them and who resided at Normangee where the seed were to be delivered, by deposition on cross-examination admitted:

"Before I was given an order for said seed, I told Mr. T. L. Massey that the seed would be good, sound, new crop, recleaned cane seed. I was instructed by Smith Bros. Grain Company to make the representations that are in the above question, viz. that the same would be good, fertile sorghum seed of the 1918 crop."

In this connection it will be noted by recurrence to preceding summaries numbered (1) and (3) that the trial court made a slight difference in the verbiage between the findings as to what the agent represented to the purchasers and what he was authorized by his principals to do, the word "fertile" appearing in the former as in his testimony just quoted, while in the latter it does not; but in our opinion there is no real difference either in meaning or legal effect, as the court below elsewhere also concluded.

[3] When at the beginning of the 1919 season seed are sold expressly and solely for planting purposes under the positive representation that they are "good, sound, sorghum seed for planting purposes of the 1918 crop," we think the idea that they are fertile and will germinate so inheres in the statement of what the quality of the goods actually is as to amount to a warranty that they possess that quality; in such circumstances the parties were not dealing at arms' length with each other as to the quality of the goods, but the purchasers were entitled to rely upon the warranty, and the general principle of caveat emptor, invoked by appellants would not apply.

[4] The measure of damages applied is not subject to the objections made against it. The evidence showed that the seed were not fit for the purposes for which they were sold, and were then disposed of for the best price obtainable in the condition they were actually in; the difference between the amounts thus obtained and the contract price was then taken, which properly measured the loss incurred.

[5] The assignments complaining of the overruling of appellants' plea of privilege to be sued in the county of their residence, Tarrant, cannot be sustained, for the reason that they did not prosecute their appeal from that order of the trial court before going to trial upon the merits of the cause. Chapter 176, art. 1903, General Laws of the State of Texas of the Thirty-Fifth Legislature (1917) p. 388 (Vernon's Ann. Civ. St. Supp. 1918, art. 1903); Hill v. Brady (Tex. Civ. App.) 231 S. W. 145.

The conclusions stated determine the merits of the appeal; all assignments have been overruled and the judgment affirmed.

Affirmed.