ARTHUR KELLY, appellee, v. W. S. EMARY, appellant.

## No. 47804.

(Reported in 45 N.W.2d 866)

685

FEBRUARY 6, 1951.

REHEARING DENIED MAY 11, 1951.

Killmar & Reynoldson, of Osceola, for appellant.

Thos. E. Mullin and Healey & Reynolds, all of Creston, for appellee.

THOMPSON, J.—Plaintiff's cause of action was originally in two counts. Count I declared upon a check given to plaintiff by defendant, dated and delivered on March 7, 1947, in the sum of $2886, with protest fees of $2.25. Count II was dismissed at the close of plaintiff's evidence, and no further attention need be given to it.

Defendant's answer was in three divisions, but as Division

II was directed to Count II of the petition it will be disregarded, and Division III will hereafter be referred to as Division II. Division I admitted the making and delivery of the check, and that the check had not been paid. Further, this division of the answer alleged that the check was given in payment for a truck load of feeder hogs, which plaintiff warranted to be free from any infectious disease, in particular the disease of "scours." Breach of the warranty was pleaded with allegations that "on account of the breach of warranty and the diseased condition of said hogs, they were of no value and the consideration for the said check wholly failed." It was further alleged that plaintiff was orally notified of the diseased condition of the hogs, that they were tendered back to plaintiff and that he refused to accept them.

Division II of the answer pleaded a counterclaim, based upon the same claimed breach of warranty, alleging the death of seventy-nine out of a total of one hundred thirty-three of said hogs, and pleading certain expenses for feeding, veterinarian's charges and other items.

At the close of all the evidence in the case the trial court directed a verdict for the plaintiff upon the check, with interest. Thereupon defendant asked leave to file an amendment to his counterclaim to conform to proof, setting up the death of seventy-eight of the hogs, that eleven more were so diseased that they also were of no value, and that the remaining forty-four were fed and sold on the market but that they consumed extra feed and required extra care on account of their sickness. Further allegations set out the amount of damage claimed because of the nonvalue of the hogs which died and of the eleven which were so diseased as to be worthless. The amendment sought to strike out the total loss claimed in the original counterclaim which was put therein at $2500, and to increase it to $3500. The court, upon objection by plaintiff, refused to permit the filing of the amendment; denied plaintiff's motion to direct a verdict upon the counterclaim, and submitted it to the jury, which returned a verdict thereon in the sum of $350. The defendant requested certain instructions and took exceptions to those given by the court. But no issue is involved herein concerning these, for the reason, stated by defendant in the record, that "the defendant's

requested instructions and the defendant's exceptions to the court's instructions are not included in the record, because the jury returned a verdict for the defendant, W. S. Emary, upon his counterclaim." Immediately following this statement, however, the record shows the following:

"That, so far as the instructions given by the court on its own motion are concerned, the only points upon which appellant will rely on the appeal are:

"(a)  There was no specification of damages in the counterclaim for the difference between the actual value of the load of hogs in their diseased condition and the contracted sale price on March 7, 1947. Such item of damage was not in issue at the time of the submission of the counterclaim to the jury.

"(b)  That the instructions given by the court did not submit any specification of damages to the jury on account of the difference in the value of the load of hogs in the condition in which they actually were at the time of delivery, and the contract price as evidenced by the amount of the check given for them by defendant, W. S. Emary."

Whether these objections are based upon exceptions properly taken to the instructions is not shown, and under well-established rules we cannot consider them. In any event, they are not well-founded, as will hereafter appear.

I.  Defendant's assignments of error, while variously stated, center around the action of the court in directing a verdict for the plaintiff upon Count I of his petition. The transaction herein is governed by the provisions of the Sales Law, and seems, without any real question, to come under paragraph 1a of section 554.70, Code of 1950, I. C. A., which we set out here:

"1.  Where there is a breach of warranty by the seller, the buyer may, at his election:

"a.  Accept or keep the goods and set up against the seller the breach of warranty by way of recoupment in diminution or extinction of the price."

While defendant's answer alleged a tender of the hogs to plaintiff, and his refusal to accept them, the evidence shows no

sufficient tender. Defendant's own testimony shows that on March 14, 1947, he called plaintiff, told him the hogs were sick, and asked him to come up and see them. Plaintiff said he would not. Later, defendant and plaintiff met in Dr. Windland's office, where, according to defendant, he asked plaintiff to "take off some on the hogs. He said he would not." There was no evidence of rescission to be submitted to the jury, and no assignment of error is based upon the court's failure so to do.

Defendant had the right, however, to set up the breach of warranty against plaintiff by way of recoupment in diminution or extinction of the price. This he did in the first division of his answer. It should be noted here that defendant's demand, at best, could not be held to justify a finding of no value whatever for the hogs because he kept the hogs and received, according to the record, quite substantial amounts from those which did not die when he put them on the market some months later. Recoupment is defined as "in the nature of a cross-action, wherein defendant alleges that he has been injured by a breach by plaintiff of another branch of the same contract on which the action is founded, and claims to stop, cut off, or keep back so much of plaintiff's damages as will satisfy the damages which have been sustained by defendant." 57 C. J., section 1, page 359. There is an interesting discussion of the nature and effect of recoupment in 22 Iowa Law Review 118.

It is clear that defendant was given the right by the statute above-quoted to resort to this defense. In so doing, however, he necessarily resorted to allegations of breach of warranty. It was not sufficient for him to plead merely that the hogs had no value, or that their value was not equal to the purchase price established by the check. This would show only that he made a bad bargain. It was incumbent upon him to prove that the diminished value was due to some breach of the contract by plaintiff. This he recognized, and so pleaded and attempted to prove the warranty and its breach. Here he assumed the burden of proof. It is true that the burden to show consideration is upon the plaintiff in a suit such as this. In re Estate of Custer, 229 Iowa 1061, 1065, 295 N.W. 848; Spurway v. Read, 210 Iowa 710, 712, 231 N.W. 306, 308. He carried the burden in the first instance through the presumption of consideration attaching to a

written contract. Code section 537.2, I. C. A. But the burden never shifted, although the duty of going forward with the evidence did so.

However, it must be noted that defendant himself assumed the burden of showing breach of warranty, both in his answer and counterclaim. In Oelwein Chemical Co. v. Baker, 204 Iowa 66, 68, 214 N.W. 595, plaintiff sued to recover the purchase price of certain merchandise. Defendant answered and counterclaimed, pleading fraud and breach of warranty. The court submitted the issues. Upon appeal we held that there being no evidence to prove a breach of warranty the issue should not have been given to the jury. In Hoffman v. Independent District of Hampton, 96 Iowa 319, 65 N.W. 322, we held that the burden is upon the buyer to plead and prove breach of warranty.

■ It appears, therefore, that the same burden rested upon defendant to plead and prove breach of warranty either under his answer or his counterclaim. The same breach was relied upon in each, and the same evidence was applicable. So, if he had his claim properly submitted to the jury, he has no cause for complaint, whether it passed upon it as an affirmative defense to plaintiff's claim or as a separate cause of action by way of counterclaim. It may be that technically defendant was entitled to have his allegation of breach of warranty submitted upon his answer in Division I; but if so, the court's failure to give the jury an opportunity to pass upon it at this point was nonprejudicial. We are of the opinion that the jury had fair opportunity to determine all questions involving breach of warranty and the loss to defendant resulting therefrom.

It should also be noted, in connection with the question as to whether any greater burden rested upon defendant under his counterclaim than under his answer, that the jury found for him upon the counterclaim. So, whatever the burden placed upon him, it did him no harm, and no prejudice could arise.

Defendant urges that it is unusual to direct a verdict in favor of the party having the burden, and says that it must follow that the court was in error here. We need not determine this contention since it has been pointed out above that the same issue was involved in the counterclaim and that defendant had the benefit of every issue raised in his answer in the sub-

mission of the counterclaim. Under this view, also, it is immaterial that the court did not comply with Rule 118, R. C. P., in sustaining the motion to direct.

■ II. Another matter requires discussion. It has been pointed out above that defendant's amendment to counterclaim, offered at the close of the evidence and after the trial court granted plaintiff's motion to direct upon his check, was denied. We need not determine whether this was error. The court did, in fact, in the first paragraph of Instruction No. 12, submit the substance of the proposed amendment. Thereby some damages may have been submitted for the consideration of the jury which were not supported by any pleading. But the plaintiff is not here complaining, and the defendant is not in a position to predicate error upon the situation. We set out here the paragraph of Instruction No. 12 in question:

"If you find the defendant is entitled to recover upon his counterclaim the measure of his recovery will be the difference between the amount which defendant paid for the hogs purchased by him, at the time of said sale, and their value in the condition in which they actually were at that time, as you find the difference in such value, if any, from the evidence."

■ This gave defendant all that he was entitled to upon the question of diminution in value of the hogs. It is the measure set up by defendant in his proposed amendment to counterclaim. The true measure of damages here was the difference between the value of the hogs as it would have been if they had been as represented, and the actual value as they were. But no exception was taken by defendant, and under the circumstances nothing prejudicial to him appears.

It is one of defendant's objections, set out above, that "the instructions given by the court did not submit any specification of damages to the jury on account of the difference in value of the load of hogs in the condition in which they actually were at the time of delivery, and the contract price as evidenced by the check given for them." The first paragraph of Instruction No. 12 does exactly that.

■ There is some question that the "damages" instruction, No. 12, submitted elements of damage not claimed in the plead-

ings. If so, this was error against the plaintiff, but he does not appeal. We have held that under such circumstances the instruction becomes the law of the case, and the issue presented, although not pleaded, is properly for the determination of the jury. We said in State v. Anderson, 209 Iowa 510, 517, 228 N.W. 353, 356, 67 A. L. R. 1366, 1371: "It is the duty of the jury to follow the instructions of the court. They are presumed to do so."

In Hanson v. Kline, 136 Iowa 101, 112, 113 N.W. 504, we held that it is proper for the court to instruct upon issues tried, although not technically within the scope of the pleadings. See also Seevers v. Cleveland Coal Co., 158 Iowa 574, 138 N.W. 793, Ann. Cas. 1915D 188; Des Moines Asphalt Paving Co. v. Lincoln Place Co., 201 Iowa 502, 504, 207 N.W. 563; and 53 Am. Jur., Trial, sections 844, 845.

III. The court did not submit certain elements of damages claimed by defendant in his pleadings. But no exception was taken on this account, and no error is assigned thereon. In addition, it is our opinion that the court was correct in this ruling, since the damages excluded were remote and speculative and lacking in substantial support in the proof.

IV. Defendant predicates error upon the fact that the court directed a verdict upon the check at the close of all the evidence, and before the submission of the counterclaim to the jury. He cites Hedinger v. Herweh, 239 Iowa 1146, 34 N.W.2d 202, which in turn quotes from Town v. Bringolf, 47 Iowa 133, 134. These cases hold that a judgment should not be entered upon a petition while a counterclaim remains undisposed of. They are correct upon the facts involved, but are not in point here. In this case the counterclaim had been disposed of up to the point of its submission to the jury and its verdict thereupon. The evidence in the case had been fully introduced, and nothing remained but the final determination of the issues by the jury. If the court felt, as he did, that there was no jury question involved in the case so far as it involved plaintiff's petition, the time had arrived when he must so rule. He could do so only by directing a verdict. It is difficult to see how he could have done otherwise. He could hardly submit the counterclaim without in some manner telling the jury what had happened to plaintiff's cause of action.

Nor can we agree that prejudice to the jury's determination of the counterclaim appears from the direction of the verdict on the petition. Defendant feels that in some improper way the jury was given an impression adverse to his counterclaim thereby. It occurs to us that it could as reasonably be argued that the jury, knowing that plaintiff was to recover the full amount of his claim, if convinced of the justice of defendant's cause would thereby be stimulated to increase the allowance on the counterclaim accordingly.

No error appears under this assignment.

V. By way of summary, it is our holding that the question of whether the court erred in directing a verdict upon the plaintiff's petition and entering judgment thereon is moot, for the reasons that the submission of the counterclaim gave the defendant the benefit of every issue that could have been litigated upon his answer to the petition; that no undue burden was placed upon the defendant thereby; and that, if any greater burden was laid upon him by submission of the issues in his counterclaim in this manner instead of, or together with, his answer, no prejudice resulted, because the jury found for him upon the counterclaim, thereby demonstrating that he had carried the burden, whatever it may have been.

We find no prejudicial error in the record.—Affirmed.

All JUSTICES concur except MANTZ, J., not sitting.