CLYDE DRAGER et al., appellees, v. CARLSON HYBRID CORN COMPANY, INC., appellant.

No. 48128.

(Reported in 56 N.W.2d 18)

December 16, 1952.

Mallonee & Mallonee, of Audubon, for appellant.

Jones, Cambridge & Carl, of Atlantic, for appellees.

GARFIELD, J.—Plaintiff Drager owns and supervises the operation of two adjoining quarter-section farms. Plaintiff Rabe occupies one farm, plaintiff Thomsen the other. They are Drager's sons-in-law. Defendant-corporation grows, buys and sells hybrid seed corn. This is a law action to recover the agreed price of $3.50 per bushel for 3290 bushels of seed corn grown by plaintiffs and sold to defendant during 1948. The answer and counterclaim alleges a breach of implied warranty in the sale. At the close of the evidence the trial court directed a verdict for plaintiffs on both defendant's counterclaim and the full amount of plaintiffs' claim. From judgment thereon defendant has appealed.

Plaintiffs' petition alleges that during March or April 1948 they made an oral agreement with defendant whereby plaintiffs agreed to sell and defendant agreed to buy all seed corn raised by plaintiffs in 1948 at the agreed price of $3.50 per bushel, defendant was to furnish the seed and truck the corn from the farms to its plant; plaintiffs grew the corn, delivered to defendant 3290 bushels during the fall and winter of 1948-49 and duly performed all conditions of the contract on their part; defendant has refused to pay for the corn except that $2000 was paid. Judgment is asked for $9515 with interest from August 1, 1949.

Defendant's answer and counterclaim denies the allegations of the petition. Division II alleges the making of the oral agreement substantially as alleged by plaintiffs; that at the time of the agreement plaintiffs knew defendant was agreeing to buy the corn produced by them for the purpose of selling it at retail for hybrid seed, and defendant, in entering into the agreement, was relying upon plaintiffs' skill, judgment and experience as growers of hybrid seed corn; at the end of the 1948 season plain-

tiffs delivered to defendant 3290 bushels of corn for seed purposes; in selling the corn to defendant with the knowledge and under the circumstances aforesaid plaintiffs impliedly warranted it to be reasonably suitable for retail sale as seed; that 1410 bushels of the corn was unsuitable for resale as hybrid seed corn and its only value was for sale as feed; if the corn had been suitable for seed it would have been worth $10 per bushel, but being unsuitable for seed it was not worth more than $1.10 per bushel and consequently defendant was damaged $12,549 for which judgment was asked. Plaintiffs' reply denies the allegations of Division II of the answer and counterclaim.

At the conclusion of trial to a jury the court directed a verdict against defendant not only on Division II of its answer and counterclaim but for the full amount of plaintiffs' claim. From judgment thereon defendant has appealed. The court's ruling on Division II indicates it was based on failure of proof as to (1) the measure of damages and (2) reliance by defendant on the seller's skill or judgment. Plaintiffs' motion for directed verdict on their claim, which defendant contends was made upon a suggestion by the court, merely asserts as a ground "that the evidence * * * is so clear and unequivocal a jury could find in no other fashion."

■■■ Of course it is our duty under innumerable decisions to consider the evidence in the light most favorable to defendant. The three plaintiffs testified for themselves. Elmer Carlson, controlling owner of defendant-corporation, and four of its employees were witnesses for defendant.

The oral agreement in question was made between plaintiff Drager for himself and coplaintiffs and Elmer Carlson for defendant. Drager had grown hybrid seed corn for himself and for sale to different companies for about nine years before 1948. The first transaction between Drager and Carlson was initiated by Drager in the spring of 1946 when Carlson purchased 600 or 700 bushels of Drager's 1945 hybrid seed corn at $3 per bushel. In April 1946 Drager and Carlson entered into a written contract under which Drager agreed to grow hybrid seed corn for sale to Carlson in 1946 at $3 per bushel at Drager's farm, Carlson to furnish the seed. The contract provided: "First party

[Carlson] reserves the right to reject any and all of the crop for seed in event it does not for any reason in the judgment of first party qualify for seed corn. * * * rejected corn will be weighed and delivered back to the grower."

Drager and defendant performed the 1946 contract. In March 1947 Drager moved off the farm he had been occupying and Rabe moved on it. In 1947 Drager and his coplaintiffs grew seed corn for sale to defendant at $3 per bushel under an oral agreement, defendant again furnishing the seed. The oral agreement for 1948 (the year in controversy) called for a price of $3.50 per bushel at the farm, defendant to furnish the seed as in 1946 and 1947.

At different times in the fall and winter of 1948-49 plaintiffs delivered to defendant at the farm a total of 3290 bushels of 1948 shelled corn. As each load arrived at defendant's plant a sample was taken for testing and it was all put in one bin, unmixed with other corn. Defendant's general foreman testifies he noticed quite a lot of rotten and cracked kernels. Carlson and an employee say 7½ per cent of all corn delivered was damaged by mold or other causes and was unsatisfactory for seed.

In November 1948, after part of the corn was delivered, Carlson told Drager he was not satisfied with it. About April 1 (1949), after Drager returned from California, Carlson informed him 1410 bushels of this corn graded out as unsuitable for seed on the "gravity machine", it could be sold for $1.25 a bushel, market price for feeding corn, or Drager could have it back. Drager refused to take a discount on the corn and apparently refused to take back any of it. In the meantime, about January, defendant paid Rabe and Thomsen each $1000, after part of the corn had been delivered.

We consider now whether the evidence would warrant a finding of implied warranty in the sale of the corn. Section 554.16(1), Code, 1950, provides: "Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose."

■ This part of the Uniform Sales Act contains two vital requirements: (1) That the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and (2) it appears the buyer relies on the seller's skill or judgment. See Brandenberg v. The Samuel Stores, 211 Iowa 1321, 1324, 1325, 235 N.W. 741, 77 A. L. R. 1161; Kurriss v. Conrad & Co., 312 Mass. 670, 46 N.E.2d 12, 16; 46 Am. Jur., Sales, section 356.

There can be little doubt defendant made known to Drager (and through him to his coplaintiffs) that the corn it was purchasing from plaintiffs was for the particular purpose of resale for hybrid seed. Drager as a witness in effect so admits.

Plaintiffs well knew defendant was engaged in the purchase and sale of hybrid seed corn. Drager testifies with regard to the 1948 agreement, "I suppose it was an agreement to produce hybrid seed, parent stock. * * * I assumed the production that would come off the parent stock would be used by defendant for seed."

We think too there is substantial evidence that in agreeing to purchase plaintiffs' corn for resale as seed Carlson relied on the sellers' skill or judgment, especially Drager's. It is an important consideration in this connection that Drager was an experienced grower of hybrid seed corn and Carlson knew this. A claim of implied warranty of fitness has more frequently been upheld where the seller is the manufacturer or grower of the product than where he is a mere dealer. See annotation 168 A. L. R. 581, 583, 586, and earlier annotations therein referred to; 1 Williston on Sales, Rev. Ed., sections 235, 240; 46 Am. Jur., Sales, section 356. See also Ideal Heating Co. v. Kramer, 127 Iowa 137, 143, 102 N.W. 840.

As previously stated, for nine years before 1948 Drager had grown hybrid seed corn for himself and for sale to different dealers. Some of those years he had caused corn grown by him to be certified for seed. Without going into detail, it appears much care must be used in producing certified seed in order to pass inspection. Drager had gone around checking different cornfields for certification. He had been asked by authorities from Ames if he would consider a position as an examiner of seed for certification. Drager supervised the growth and detasseling of

his corn. In 1948 he hired 30 to 40 people to detassel and was out with them every day.

Drager had a special dryer, an 18-foot steel bin heated by fuel oil to dry the corn after it was harvested. The 1948 corn was put in this dryer after many bad ears were thrown out. Other damaged ears were thrown aside for feed when the corn from the dryer was shelled.

There is no evidence defendant exercised any supervision over the production of the corn in question. As might be expected, Carlson went to Drager's farms twice in 1948 to estimate the yield. Once was on a Sunday in detasseling time. The other occasion was in September. The corn defendant purchased from Drager in 1946-47 was satisfactory for hybrid seed.

Carlson testifies that when the 1948 agreement was made with Drager, "I told him he would have to watch and sort the corn because the original corn he had done a good job on. He said he would do a good job and take care of it like he would for himself. * * *. Q. State whether or not you relied on the contract with Mr. Drager throughout the time related here? A. Yes."

It is not necessary that the buyer testify in so many words he relied on the seller's skill or judgment. Reliance may be shown by the circumstances of the case. The buyer's reliance on the seller need not be a total reliance. The buyer may rely on his own judgment as to some matters and on the seller's skill and judgment as to others. See Merkle-Hines Machinery Co. v. Gaynor, 185 Iowa 210, 218, 170 N.W. 381; Mitchell v. Pinckney, 127 Iowa 696, 698, 699, 104 N.W. 286; Kurriss v. Conrad & Co., supra, 312 Mass. 670, 46 N.E.2d 12, 17, 18; Turner v. Central Hdwe. Co., 353 Mo. 1182, 186 S.W.2d 603, 158 A. L. R. 1402, 1410; 77 C. J. S., Sales, section 325b, page 1181; id., section 367, page 1303. See also F. M. Sibley Lbr. Co. v. Schultz, 297 Mich. 206, 297 N.W. 243, 247.

1 Williston on Sales, Rev. Ed., section 235, page 610, states, "* * * in doubtful cases it is a question for the jury whether there was such reliance" (on the seller's skill or judgment).

We may observe at this point that the tendency is to narrow the application of the rule "caveat emptor" and to extend the doctrine of implied warranty in the sales of personalty. 46

Am. Jur., Sales, section 339, says: "The maxim 'caveat emptor' was formerly of more general application than now, and there is considerable authority in support of the view that the doctrine of implied warranty should be extended rather than restricted. It has been said that the tendency of all the modern cases on warranty is to enlarge the responsibility of the seller and frequently to imply a warranty on his part from acts and circumstances, wherever they were relied upon by the buyer * * *." Much to the same effect is 77 C. J. S., Sales, section 315c, page 1160, n63.

Plaintiffs call attention to Code section 554.72, which reads: "Where any right, duty, or liability would arise under a contract to sell or a sale by implication of law, it may be negatived or varied by express agreement or by the course of dealing between the parties, or by custom, if the custom be such as to bind both parties to the contract or the sale."

█ Plaintiffs argue that defendant's acceptance without complaint of all corn delivered by them in 1946 and 1947 established a course of dealing between the parties which conclusively negatives any implied warranty of the 1948 corn. The trial court's direction of a verdict cannot be upheld by this argument. There is no evidence any corn delivered in 1946 or 1947 was not suitable for seed. Acceptance of corn suitable for seed in these two years would impose no duty on defendant to accept corn unfit for seed in 1948. Further, as previously explained, the 1946 corn was sold under a written contract which gave defendant the right to reject any corn which in its judgment did not qualify for seed. There is no testimony which negatives this right. There is no evidence of any custom, whether or not "such as to bind both parties", that negatives an implied warranty of the 1948 corn.

What we have just said is also a sufficient answer to plaintiffs' argument that defendant's acceptance without complaint of all corn delivered by them in 1946 and 1947 placed a practical construction on the agreement made in 1948 which is inconsistent with an implied warranty of fitness. Other contentions of plaintiffs have been considered and found without merit.

█ If there was an implied warranty the 1948 corn was fit for seed (and that was a question for the jury), there is sub-

stantial evidence much of it did not comply with the warranty. Defendant had the right to set up against plaintiffs the breach of warranty by way of recoupment in diminution of the price. Code section 554.70, subsection 1, paragraph *a*; Kelly v. Emary, 242 Iowa 683, 687, 688, 45 N.W.2d 866, 869; Rice v. Friend Bros. Co., 179 Iowa 355, 369, 370, 161 N.W. 310; Lander v. Samuel Heller Leather Co., 314 Mass. 592, 50 N.E.2d 962, 964; 46 Am. Jur., Sales, section 724. It is unnecessary to consider the distinction which existed at common law between setoff and recoupment. See 3 Williston on Sales, Rev. Ed., sections 605, 605a.

We cannot agree there was a failure of proof as to the measure of defendant's damage for breach of warranty. There is testimony the market value of the corn unfit for seed was $1.25 per bushel. This is the amount Carlson says in effect he offered Drager if Drager was unwilling to take back the corn unfit for seed.

As to the unfit corn defendant should pay only for what it got (feeding corn), not for what it did not get (seed corn). We think the extent of defendant's liability for the unfit corn is its market value. In other words, as to the corn unfit for seed defendant is entitled to set off against plaintiff's claim for the contract price the difference between such price and its market value.

46 Am. Jur., section 724, page 849, states the rule we believe is applicable here: "* * * the law does not require a party to pay for an imperfect and defective article the price stipulated for a perfect one, and, when the price is demanded, will allow him to deduct the difference between that price and the value of the inferior work * * *. This is a rule of strict justice, and the deduction is allowed in a suit upon the contract to prevent circuity of action."

We are aware that ordinarily the measure of damages for breach of warranty is the difference between the value of the goods as they were and the value they would have had if they had answered to the warranty. Code section 554.70, subsection 7; Kelly v. Emary, supra, 242 Iowa 683, 690, 45 N.W.2d 866, 871; Norris v. O'Connor, 166 Iowa 303, 306, 147 N.W. 752; Loxtercamp v. Lininger Implement Co., 147 Iowa 29, 36, 125 N.W.

830, 33 L. R. A., N. S., 501; 3 Williston on Sales, Rev. Ed., section 613; 77 C. J. S., Sales, section 376.

However, we think the rule just stated from which defendant seeks to benefit is, for reasons about to be mentioned, inapplicable under the circumstances here. That defendant may have claimed more damages than it is entitled to and offered evidence in support of such claim affords no ground for denying it proper relief which is within that claimed and shown by the testimony.

Our Sales Act gives the buyer, at his election, four remedies for breach of warranty. The first (to which we have already referred) is: "Accept or keep the goods and set up against the seller the breach of warranty by way of recoupment in diminution or extinction of the price." Code section 554.70, subsection 1, paragraph a. This is the remedy defendant seems to have elected. It says in argument "defendant sets up for diminution of the purchase price damages suffered by reason of breach of warranty." By the plain terms of the statute, therefore, the maximum relief which could be awarded defendant is "extinction of the price."

If the unfit corn were worthless defendant would be entitled to such maximum relief as to so much of the corn. However since the corn unfit for seed admittedly has a substantial market value for feed it is only just that defendant, if it keeps the corn, should be liable for such value. So defendant here is entitled merely to diminution, not extinction, of the price of the unfit corn.

As stated in 78 C. J. S., Sales, section 459b, page 109, "if the goods are defective, the seller may at least recover their value, not to exceed the contract price * * *." And 46 Am. Jur., Sales, section 750, page 879, says: "Where seed furnished is unfit for use and is not used, the buyer has been held entitled to the difference between the contract price and the amount obtained upon a resale." See also 3 Williston on Sales, Rev. Ed., section 605a; Hefner v. Haynes, 89 Iowa 616, 57 N.W. 421; Smith Bros. Grain Co. v. Windsor & Stanley, Tex. Civ. App., 242 S.W. 350.

That there is evidence in the record as to the measure of relief to which defendant is entitled see Mendenhall v. Kallem,

191 Iowa 987, 991, 183 N.W. 422. See also Rice v. Friend Bros. Co., supra, 179 Iowa 355, 361 et seq., 161 N.W. 310.

Other logical considerations may be pointed out in support of our conclusion as to the extent of relief to which defendant is entitled. Plaintiffs were not obligated to sell nor defendant to buy any corn except such as was fit for hybrid seed. Had plaintiffs delivered only corn of such quality defendant would have had no defense to an action for the contract price thereof. Indeed defendant has no defense to this action insofar as the contract price is claimed for corn that is fit for hybrid seed. Defendant's only complaint arises because of plaintiffs' attempt to recover the contract price for corn that was unfit for the purpose for which it was purchased. Obviously the relief to which defendant is entitled because of the delivery of unfit corn should not exceed that to which it would be entitled if such corn had not been delivered at all.

Further, as stated, the 1946 written contract gave defendant the right to reject any corn that did not qualify for seed. Such corn was to be deducted from that for which payment would be made. It may fairly be inferred that the oral agreements for 1947 and 1948 extended for those years this provision of the earlier written contract—at least defendant so asserts in argument. And Carlson's offer to pay Drager the market price of the unfit corn or return it to him is evidence that this is the practical construction Carlson placed on the 1948 agreement. Thus the parties seem to have contemplated that the relief to which defendant would be entitled if corn unfit for seed were delivered to it should in any event be limited to nonliability for the contract price.

It was error to direct a verdict for plaintiffs for the full amount of their claim.—Reversed.

All JUSTICES concur.