The United States Cam-O Corporation, appellee, v. Wesley R. Thomas dba The Thomas Studio, appellant.

## No. 48618.

(Reported in 67 N.W.2d 453)

December 14, 1954.

Robert W. Brennan, of Des Moines, for appellant.

Neiman, Neiman & Stone, of Des Moines, for appellee.

OLIVER, J.—Plaintiff is in the photographic supply business in Kansas City, Missouri. Defendant is a Des Moines photographer. Count I of the petition claimed $202.70, for the unpaid balance due upon a camera and film sold defendant. Count II claimed $1357.43 for film finishing services, etc., furnished defendant.

For answer to Count I defendant pleaded the breach of an implied warranty the camera and film were in good condition and suitable for taking high quality photographs, by reason of which breach he alleged the consideration failed and he was damaged in a sum equal to the unpaid part of the purchase price. As to Count II defendant pleaded an implied warranty the finished pictures would be of high quality, etc., and the breach thereof, by reason of which there was an entire failure of consideration and he was damaged to the full amount claimed against him in said count, for the reason that the pictures could not be sold.

Defendant also counterclaimed, alleging the camera and equipment were sold and the photograph finishing furnished for the purpose of photographing pupils in the Polk County schools; the materials and finishing were guaranteed; relying thereon he contracted with the superintendent of schools of Polk County to photograph the students; the finished photographs were of poor quality and were not delivered to defendant for from four to eight weeks and as a result of the slowness in service and poor workmanship defendant lost his exclusive contract to photograph such pupils to his loss of profits of $3000 for the school year 1951-1952.

Plaintiff's reply in substance denied the material allegations

of defendant's answer and counterclaim, except those which conformed to plaintiff's petition.

At the close of defendant's evidence the court sustained plaintiff's motion for a directed verdict for plaintiff upon Counts I and II of the petition and upon defendant's counterclaim, and verdict and judgment were rendered accordingly. In the course of the argument upon the motion, counsel for defendant conceded plaintiff was entitled to a directed verdict upon Counts I and II of its petition but contended defendant's counterclaim should be submitted to the jury. Defendant has appealed, assigning as errors the part of the order directing a verdict against defendant on his counterclaim and the order overruling defendant's motion for new trial based upon orders upon evidence and other occurrences during the trial.

A witness for defendant, plaintiff's former agent Tilton, testified he handled the sale of the camera and equipment and a roll of film to defendant. The sales bill, dated February 12, 1951, listing the articles and prices and reciting the terms, was signed by defendant. Defendant testified (denied by Tilton) he was told plaintiff would not sell him such a camera unless plaintiff was given the finishing work. The record does not show how long defendant claims this was to be required of him. It does show he ceased sending his finishing work to plaintiff before the end of the year.

The principal use for cameras and film of this type was for pictures of school students. The photographer would take a snapshot of each student in a school. The students would be lined up and the pictures taken very rapidly. From seven hundred to one thousand shots would be taken upon each roll of film. The film was then sent to plaintiff for finishing and making prints. Plaintiff would return to defendant a packet of photographs of each student, consisting of fourteen miniatures (about $2\frac{1}{4}$x$1\frac{1}{2}$), one 5x7 picture with folder, and two 3x5s with folder. Defendant's cost for each packet was 47 cents. The selling price originally was $1.50. Defendant would deliver the packets to the respective teachers of the students. Each student would buy and pay the teacher for such of his photographs, if any, as he wished. This was a plan tried out by the teachers' club for rais-

ing money to operate a bookmobile. Twenty per cent of the collections was allowed for the teacher's services and went into this fund. The unsold pictures had no value and were returned to defendant. The record does not show the percentage of these. Defendant testified: "You figure on the majority would buy."

I. Defendant's counterclaim was based upon the alleged loss of his exclusive contract with the superintendent of schools "to photograph the public schools in Polk County, Iowa." That officer's testimony, as a witness for defendant, is summarized by the following questions asked him by council for defendant and his affirmative answers:

"Q. Mr. Norris, is it a fact that as a result of your conversations with Mr. Thomas that he was more or less given permission to talk to the teachers and the Teachers' Club about photographing the students? A. That's right. Q. And that you did recommend or it was a type of arrangement that so long as he got along with them it was all right with your organization and he would have the right to photograph these students in deference to any other photographer. Is that about right? A. That's right."

Norris was the only witness whose evidence was offered to prove the alleged contract. Defendant was not asked concerning his alleged contract with Norris. The only mention of Mr. Norris was in a rambling answer of defendant to his counsel's inquiry if he had ever computed his loss. The answer was properly stricken by the court. Hence, there was no competent evidence tending to establish the contract with the superintendent of schools pleaded in the counterclaim. Economy Hog & Cattle Powder Co. v. Honett, 222 Iowa 894, 899, 900, 270 N.W. 842, and citations.

II. Another witness for defendant was Miss Meneough, a former officer of Polk County Rural Teachers' Club. She testified defendant arranged to take pictures of the students on a county-wide basis and did so. She testified also the pictures taken at her school were good and she heard of no dissatisfaction as to the condition of any of the pictures, although there was some over defendant's delay in taking some pictures, differences in prices, sizes, and in some cases the failure to furnish sheets

for the keeping of accounts of pictures sold. She had no definite conversation with defendant about pictures for the next year.

September 18, 1951, defendant took the first pictures of students for the school year 1951-1952. He testified the last pictures sent plaintiff to be finished were taken November 8, 1951. Plaintiff did the finishing work for defendant on 2925 shots. Defendant testified: "I finished the season [late winter and spring of 1952] with National [School Pictures]. I think after I quit Cam-O [plaintiff] I had 1104 shots I sent them [National]."

The only evidence concerning the action taken by the teachers' club was the testimony of Mr. Norris that the next summer—in making their plans for raising money—they decided not to renew their agreement with Mr. Thomas. This apparently took place some time after the 1104 pictures finished by National School Pictures had been delivered to the schools. The record does not disclose the reason the teachers' club decided not to continue to employ this method of raising money. It may be noted this was not a business regularly engaged in by the club, such as the business of a wholesale or retail establishment dealing in certain kinds of goods or equipment. There is no proof indicating the decision may be attributed to dissatisfaction, either with the photographs or service furnished by plaintiff or by the other company. The evidence of defendant himself offered upon this point was: "Q. Is it a fact, or is it not a fact, that because of the acts of negligence and failure to act on the part of the United States Cam-O Corporation, that you lost this contract with the rural schoolteachers?" Plaintiff objected to the question as calling for an opinion and conclusion, and leading, etc. The objection was good and the answer will not be considered.

III. In his counterclaim, defendant pleaded he "lost his exclusive contract to photograph pupils to his loss of profits of $3000 for the school year 1951-1952." However, the record shows defendant's arrangement with the teachers' club was in effect throughout the 1951-1952 school year. Furthermore, there is no substantial proof of his loss of profits for the school year 1951-1952 or the following school year. After the court sustained an

objection to certain testimony of defendant, concerning his damages, because of the claimed loss of this contract, his counsel asked him:

"Q. Well, could you give the jury then a figure, a total figure of what you have sat down and computed as to what your damages have been because of the acts of the Cam-O corporation toward you? A. I figure I lost between five thousand and seventy-five hundred dollars. Q. But is it not a fact that probably some of that figure is based on loss of reputation and that sort of thing, and it is pretty intrinsic? A. Those bad pictures not only hurt my school business; they hurt my regular studio business. I have got a black eye all over."

This is a far cry from the damages pleaded in the counterclaim. Special damages must be pleaded, and proved as pleaded. Rosenberger & Co. v. Marsh & Co., 108 Iowa 47, 49, 78 N.W. 837; King Features Syndicate v. Courrier, 241 Iowa 870, 882, 43 N.W.2d 718; 15 Am. Jur., Damages, section 10.

The record shows defendant failed to present substantial proof in support of the essential allegations of his counterclaim. Moreover, his concession that he had failed to establish the defense pleaded to each count of the petition by way of recoupment necessarily was applicable also to his counterclaim which involved the same transactions with plaintiff. Kelly v. Emary, 242 Iowa 683, 689, and 692, 45 N.W.2d 866, 870, 872; 22 Iowa Law Review 118 et seq.

We hold the trial court properly directed the verdict against defendant upon his counterclaim. This conclusion makes unnecessary the determination of the other errors assigned by defendant.—Affirmed.

All JUSTICES concur.