Alfred VORTHMAN, Appellee,

v.

KEITH E. MYERS ENTERPRISES,
Appellant.

No. 62654.

Supreme Court of Iowa.

Sept. 17, 1980.

Rehearing Denied Oct. 9, 1980.

Frederick G. White, Waterloo, and Kirby D. Schmidt of Kliebenstein, Heronimus & Schmidt, Grundy Center, for appellant.

Robert W. Feilmeyer of Cambridge, Feilmeyer, Landsness, Rutherford & Chase, Atlantic, for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, HARRIS, McCORMICK and LARSON, JJ.

LeGRAND, Justice.

This action, brought to recover damages for breach of warranty in the sale of 511 pigs, resulted in a jury verdict for plaintiff in the amount of $18,823.89. Defendant appealed, and plaintiff cross-appealed. We reverse and remand on defendant's appeal and affirm on plaintiff's cross-appeal.

Defendant is a family corporation engaged in the business of buying and selling feeder pigs. Plaintiff is an experienced farmer who has engaged for some years in the business of raising pigs. They negotiated through agents for the sale and purchase of feeder pigs at $33 each. It was agreed the animals were to be "good healthy feeder pigs."

After being trucked from the state of Mississippi, where they were raised, the pigs were delivered to plaintiff's farm late in the evening of October 18, 1975. The truck transporting them had been loaded for two separate deliveries, one to a farmer in Illinois and the other to plaintiff. The Illinois delivery was made first.

When the shipment arrived at plaintiff's farm, some of the animals appeared gaunt and sick. There were also several dead pigs among them. Furthermore, the load was "over"—there were more animals than the 500 originally contracted for. Plaintiff had some discussion with the driver concerning the condition of the animals. The driver made several telephone calls to defendant, and it was ultimately agreed that the plaintiff would accept 511 pigs. This figure was arrived at after rejecting some of the sick animals and, of course, discarding the dead ones.

Several days later, plaintiff had the animals examined by a veterinarian. It was then discovered they were suffering from both pasteurella, an ailment common to livestock and related to pneumonia, and salmonella, an intestinal disorder. These ailments were both contagious and infectious. They also showed symptoms of atrophic rhinitis. Fifty-five of the animals died. Many of the others required the attention of a veterinarian, who prescribed treatment and medication. The survivors eventually recovered and were sold at a profit.

Plaintiff claims that the animals were expressly warranted to be good, healthy feeder pigs; that they were sick and infected with one or more contagious diseases; and that he is entitled to damages for breach of warranty. Plaintiff further claims there was an implied warranty of merchantability which defendant breached. Defendant denies there was any breach of warranty and alleges further that, even if there were, plaintiff has waived any right to rely thereon because he signed a waiver at the time the pigs were delivered. This is the main dispute in the case although sever-

al other issues are raised. Defendant's appeal presents these three questions:

1. Did the plaintiff waive his claim for breach of warranty as a matter of law?

2. Did the trial court err in denying defendant's motion in limine to exclude certain evidence?

3. Did the trial court err in the instruction on damages?

## I. WAIVER AND DISCLAIMER.

The case was submitted on both express and implied warranty. The jury verdict was general, and we do not know which theory the jury adopted. The question of waiver arises because, when the animals were delivered, plaintiff signed an instrument containing this clause:

### ACCEPTANCE OF FEEDER PIGS

1. The purchaser shall have the right to inspect and reject any or all feeder pigs before loading.

2. When delivery is made directly to the purchaser, and purchaser has not previously inspected the feeder pigs, he shall have the right to inspect and reject any and all before the delivery truck leaves the premises of the purchaser.

3. THE PURCHASER HEREBY ACCEPTS THE FEEDER PIGS "AS IS" AND UNDERSTANDS THAT NO WARRANTIES EXIST IN REGARD THERETO. IT IS UNDERSTOOD THAT NO IMPLIED WARRANTIES OF MERCHANTABILITY OR IMPLIED WARRANTIES OF FITNESS EXIST IN REGARD TO THIS TRANSACTION.

■ Defendant insists this amounted to a waiver of any claim as a matter of law. We agree with the trial court that the meaning and effect of this provision was a matter which the jury, rather than the court, should decide.

Defendant relies on section 554.2316, The Code, which we set out in part:

1. Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this Article . . . negation or limitation is inoperative to the extent that such construction is unreasonable.

2. Subject to subsection 3, to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

3. Notwithstanding subsection 2

*a.* unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults" other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and

*b.* when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; . . .

■ It is quite apparent defendant sought to pattern the language of this "waiver" after the language of section 554.-2316 relating to both express and implied warranties. Despite this literal compliance with the statute, we are convinced the waiver was not established as a matter of law. To hold otherwise would contravene those positions of section 554.2316 which direct, on the one hand, that limitation or negation of an express warranty "is inoperative to the extent that such construction is unreasonable" and, on the other hand, that "circumstances [may] indicate otherwise," despite language claimed to constitute a

waiver of implied warranty. There is substantial evidence to support a finding of breach of warranty, both express and implied. Thus the vital question is: Did plaintiff waive his claim as a matter of law by signing the instrument already referred to? We believe not.

■ Negotiations for the purchase of these pigs were carried on orally. There was no suggestion plaintiff was to inspect them at his peril before acceptance. This matter arose for the first time, when the load of pigs arrived at plaintiff's farm.

The driver of the truck then presented plaintiff with an instrument to be signed in order to obtain delivery. This was not simply a receipt for the delivery of 511 pigs, however. It included, too, the language heretofore set out which is now relied on as a waiver of claim. This instrument, it is true, gave plaintiff the right to inspect before accepting the shipment, and plaintiff made a visual examination and rejected the dead pigs and a few others which appeared to be sick.

It would have been manifestly unreasonable to require that plaintiff make a thorough examination of 511 pigs at that time in order to ascertain all were fit and sound.

Plaintiff testified the delivery was made about 7 p. m. on a Saturday evening. The truck driver was anxious to get home. He wanted to get the pigs off his truck. Plaintiff wanted the animals and had been waiting for them all day. He read parts—and perhaps all—of the waiver. He had some conversation with the driver about the animals. A minor adjustment on price was made by a telephone call to defendant. There was some urgency on both sides to unload the pigs and get them settled on plaintiff's farm.

■ Whether the visual inspection made was adequate and whether plaintiff should have insisted on a full examination before accepting the load were questions for the jury. Stated differently, we hold it would be unreasonable to say the facts before us constitute a waiver by plaintiff as a matter of law. This conclusion applies to both express and implied warranty.

We hold this issue was properly submitted for determination by the jury.

## II. ORDER ON MOTION IN LIMINE.

■ Before trial, defendant filed a motion in limine seeking to exclude the testimony of Robert Trott, the Illinois farmer to whom some of the pigs from the same shipment were delivered prior to delivery of plaintiff's pigs. The motion also sought to exclude certain evidence concerning identifying ear–tags attached to the animals. The motion was denied. No objection to this testimony was made at the trial and thus no error is preserved for review here. *State v. Judkins*, 242 N.W.2d 266, 269 (Iowa 1976); *Rush v. Sioux City*, 240 N.W.2d 431, 438 (Iowa 1976); *Twyford v. Webber*, 220 N.W.2d 919, 922–24 (Iowa 1974); *State v. Hinsey*, 200 N.W.2d 810, 817–18 (Iowa 1972).

## III. DAMAGES.

This brings us to the issue of damages. The matter was submitted by Instruction 17 under which the jury was permitted to consider the following items of loss:

1. The value of the fifty–five feeder pigs which died.
2. The difference between the value of the remaining pigs (456) if they had been as warranted and their value in the condition in which they were delivered.
3. The reasonable value of the veterinary services and medicines required for the treatment of the pigs.
4. The reasonable value of the feed consumed by the pigs which died.
5. The reasonable value of the excess feed consumed by the feeder pigs which lived (excess feed was defined by the court).
6. The amount which would fairly and reasonably compensate the plaintiff for his additional labor as a natural consequence of the disease and illness of the feeder pigs.

Defendant made the following objection to this instruction:

With regard to Instruction 17, the defendant objects thereto for the reason . . . that it fails to instruct the jury that in assessing damages, if any the jury finds, the jury should consider and reduce any amount of damages awarded to the plaintiff by such an amount as will reflect the amount by which plaintiff's damages were mitigated and reduced upon final sale of the pigs by the plaintiff.

The defendant further objects to said instruction for the reason that there is not sufficient evidence to warrant the submission of any of the specific items of damages therein contained to the jury on the record in this case.

Defendant says this objection raised the question of plaintiff's duty to mitigate damages and that the trial court erred in refusing to so instruct.

■ We question whether this is correctly labeled a mitigation–of–damage issue. It would be different if defendant were asserting plaintiff failed to properly care for the herd and suffered loss thereby. However, that is not the case. Defendant seeks only to reduce plaintiff's loss by the amount he realized from the sale of the animals. We have held damages are subject to diminution by that amount. *Holm v. Hansen*, 248 N.W.2d 503, 511 (Iowa 1976); *Drager v. Carlson Hybird Corn Co., Inc.*, 244 Iowa 78, 86–87, 56 N.W.2d 18, 24 (1952). It is not necessary to set such matter up as a special defense.

■ We might add, simply because the parties argue the mitigation issue, that we believe that matter would be here for review if we found it necessary to decide the question. The general rule is that mitigation must be pled and proved by the party asserting it. That was not done here. However, a party may nevertheless rely on it to the extent mitigation, or lack of it, arises out of the evidence of his adversary. *Ackerman v. Lauver*, 242 N.W.2d 342, 346 (Iowa 1976). In the present case, most or all of the evidence relative to this issue came from plaintiff himself.

■ The purpose of damages is to restore plaintiff to the same financial position he enjoyed before his loss. He should have nothing less; he is entitled to nothing more. *Schiltz v. Cullen–Schiltz & Associates, Inc.*, 228 N.W.2d 10, 20 (Iowa 1975); *Householder v. Town of Clayton*, 221 N.W.2d 488, 493 (Iowa 1974). The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach. *W & W Livestock Enterprises, Inc. v. Dennler*, 179 N.W.2d 484, 489 (Iowa 1970).

■ The starting point for damages in breach of warranty cases is the difference between the value of the pigs as warranted and their actual value when delivered. However, this is not an inflexible rule. The statute permits a departure from this standard if "special circumstances show proximate damages of a different amount." § 554.2714(2), The Code 1975. We have construed this to mean only *higher* damages may be justified by special circumstances. *Turner v. Kunde*, 256 Iowa 835, 842, 128 N.W.2d 196, 200 (1964). However, that decision turned on the wording of the statute then in effect, which specifically provided for damages in a "greater amount" if special circumstances were shown. § 554.70(7), The Code 1958. The applicable code section is now 554.2714(2), which has substituted "different amount" for "greater amount" in assessing damages for breach of warranty. We believe this change in statutory language is significant and that the present standard is to allow *either* more or less than the difference between the value of the property as it should have been and as it actually was. This conforms to the basic principle that damages should compensate for the loss actually suffered.

We point out parenthetically that *Ruden v. Hansen*, 206 N.W.2d 713, 718 (Iowa 1973), decided after the adoption of section 554.-2714, contains language which seems to approve the rule in *Turner v. Kunde*. However, the question now before us was not present there, and what was said on that point is dictum.

We have found no case, and none has been cited, which arises on facts analogous to those here. Usually breach of warranty results in a direct loss upon sale or other disposition of the defective property. Here plaintiff realized a substantial profit from the pigs. This is what gives this case a unique touch.

Plaintiff purchased 511 pigs. They were not as warranted. Fifty–five died. The remaining 456 were sold, some to plaintiff's son, the rest at market. According to plaintiff's testimony, he had a gross profit of $7,000 from the disposition of these animals. Thus, he had no "loss" in the ordinary sense. By hard work and good husbandry, he turned a potential loss into a profit. He took sick pigs and made them "good healthy feeder pigs"–what they should have been (but weren't) when he got them. From the record before us, we take it the animals, when sold, brought the price they would have commanded if there had been no breach of warranty in the first place.

What, then, are plaintiff's damages? They are the value of the fifty–five pigs which died and the total cost, including additional labor, in making good pigs out of bad ones. The trial court properly allowed all of these items but allowed, too, recovery for the surviving pigs under the general rule that the measure of damage is the difference in value between the property as warranted and its real value as delivered.

 Applied to the present facts, such a rule permitted plaintiff to recover an amount substantially in excess of his loss and greatly more than is justified under the evidence. *See Holm v. Hansen*, 248 N.W.2d at 511 (court must consider amount realized from sale of defective animals in assessing damages); *Drager v. Carlson Hybird Corn Co., Inc.*, 244 Iowa at 87, 56 N.W.2d at 24 (seller entitled to credit for amount buyer received from sale of defective corn).

 We hold the judgment must be set aside because of reversible error in the damage instruction. However, it would be unfair to require a new trial on all issues. Liability has been definitely established.

The jury verdict was not the result of a compromise trading off liability for reduced damages. *See Householder v. Town of Clayton*, 221 N.W.2d at 493. The case comes, rather, within the rationale of *Dailey v. Holiday Distributing Corp.*, 260 Iowa 859, 877, 151 N.W.2d 477, 489 (1967).

We therefore remand for a new trial on the single issue of damages. Plaintiff should be permitted recovery for all damages proximately resulting from defendant's breach of warranty. No recovery shall be permitted for the "difference between the value of the remaining pigs at the time of delivery . . . and the value [the pigs] would have had if they had been as warranted by the defendant."

We do not intend to change the general rule of damages for breach of warranty cases. Our opinion is limited to the peculiar facts of this case, showing that, despite the breach, the property was sold for a profit.

We consider now the two issues raised by plaintiff's cross–appeal.

## IV. ALLOWANCE OF INTEREST.

Plaintiff insists he is entitled to interest on his claim from the dates each item of damage accrued. The trial court allowed interest only from the date of the judgment some three years later.

 The time from which interest is allowed has long been the subject of dispute. Our rule allows interest from the date a claim is liquidated. Despite what we said in *Thomas Truck & Caster Co. v. Buffalo Caster & Wheel Corp.*, 210 N.W.2d 532, 536–37 (Iowa 1973), this means the date the damage is complete, not the time the amount of recovery is ascertained. In his petition plaintiff claimed his damages were complete when the breach of warranty occurred and that he should have interest from that date. After trial, he modified his demand and asked for interest from the separate dates each specific item of damage became complete. There were claims for feed, for labor, for veterinary services, for pigs which died and pigs which lived. The practical difficulty of such a piecemeal computation is evident and was discussed in

*Mrowka v. Crouse Cartage Co.,* 296 N.W.2d 782 (filed September 17, 1980). The trial court was right in refusing plaintiff's request. However, this does not mean plaintiff can have interest only from the date of the judgment.

We have recently considered the interest problem in both *Mrowka* and *Kuper v. Chicago & North Western Transportation Co.,* 290 N.W.2d 903 (Iowa 1980). As shown there, our rule has long been to allow interest from the time the *entire* damage is complete. *Mrowka,* 296 N.W.2d 782, quoting with approval from *Bridenstine v. Iowa City Electric Railway,* 181 Iowa 1124, 1136, 165 N.W. 435, 439 (1917). *See also Lemrick v. Grinnell Mutual Reinsurance Co.,* 263 N.W.2d 714, 720 (Iowa 1978).

Upon retrial of the damage issue on remand, plaintiff should be awarded interest from the date the evidence shows all his damage was complete and fixed.

## V. EXPENSES FOR OUT–OF–STATE DEPOSITION.

Plaintiff took the deposition of a veterinarian in the state of Mississippi. The question of reimbursement for costs was postponed until the trial. After trial, the court disallowed the expenses of plaintiff's attorney. Both parties rely on rule 123, R.Civ.P. We believe the controlling rule is rule 157, R.Civ.P. Plaintiff cites no authority for this proposition. The rule itself is modeled after rule 30, R.Fed.P. Federal cases stand for the principle that travel expenses and counsel fees in connection with depositions are not allowable in the absence of special circumstances. The matter is within the discretion of the court. *Interlego v. Leslie–Henry Co.,* 32 F.R.D. 9, 11 (D.C.Md.1973); *Towe v. Sinclair Refining Co.,* 188 F.Supp. 222, 223 (D.C.Md.1960); *Weeks v. Baltimore & O.R. Co.,* 5 F.R.D. 17, 18 (E.D.Pa.1945). The trial court did not abuse its discretion in denying plaintiff's claim.

## VI.

The judgment is reversed on defendant's appeal and the case is remanded for new trial on damages alone. The judgment is affirmed on plaintiff's cross–appeal.

REVERSED AND REMANDED WITH INSTRUCTIONS ON DEFENDANT'S APPEAL; AFFIRMED ON PLAINTIFF'S CROSS–APPEAL.