ISAAC A. GAMET, Appellant, v. LEWIS HAAS.

**Limitation of actions:** FRAUDULENT CONCEALMENT. Where fraud and concealment of material facts is relied upon as the basis of an action the statute of limitation does not commence to run until discovery of the fraud.

**Fraud:** CONCEALMENT OF FACTS: BURDEN OF PROOF: EVIDENCE. Where an action for the fraudulent concealment of material facts is apparently barred by the statute, the burden is upon plaintiff to show that by such concealment he was prevented from obtaining a knowledge of the fraud, or a knowledge of such facts that by the exercise of reasonable diligence the fraud might have been discovered within the statutory period. The evidence in connection with the sale of corporate property is held insufficient to sustain the allegations of fraud concerning the value of the property.

**Same.** Where no relation of trust existed between the buyer and seller of corporate stock, and the seller was merely a stockholder and not an

officer or promoter of the corporation, he was under no obligation to disclose the amount of corporate indebtedness.

**Same:** FRAUDULENT STATEMENTS: EXPRESSION OF OPINION. Where both parties negotiating a sale and purchase of corporate stock knew that the corporation had been a going concern but a short time, and that no dividends had been declared, a statement of the seller that he thought the investment would yield a certain income, but giving no facts upon which the thought was based, was a mere expression of opinion and not a statement upon which fraud could be predicated.

**Evidence:** ADMISSIONS IN PLEADINGS. The admissions in a pleading are conclusive against the party making them and are not matters of evidence; so that their exclusion as evidence was not erroneous.

*Appeal from Harison District Court.*—HON. O. D. WHEELER, Judge.

TUESDAY, APRIL 7, 1914.

ACTION for alleged deceit resulted in a directed verdict for defendant and judgment thereon. The plaintiff appeals. —*Affirmed.*

*Cochran & Barrett,* for appellant.

*H. L. Robertson,* for appellee.

LADD, C. J.—The transaction alleged to have been fraudulent occurred in 1903, and as this is an action at law for damages begun April 11, 1912, it was barred by the statute of limitations, unless fraudulently concealed. *McKay v. McCarthy,* 146 Iowa, 546; *Daugherty v. Daugherty,* 116 Iowa, 246; *McGinnis v. Hunt,* 47 Iowa, 668.

1. LIMITATION OF ACTIONS: fraudulent concealment.

If, however, the defendant by fraud concealed from plaintiff the existence of such cause of action, the statute of limitations did not begin to run until it was discovered, or might have been by the exercise of reasonable diligence. *District*

*Township of Boomer v. French,* 40 Iowa, 601; *Humphreys v. Mattoon,* 43 Iowa, 556.  See *Findley v. Stewart,* 46 Iowa, 657; *Shreves v. Leonard,* 56 Iowa, 76; *Brunson v. Ballou,* 70 Iowa, 37; *Mather v. Rogers,* 99 Iowa, 292.

To recover, then, the burden of proof was on the plaintiff to show that he was induced by fraud to purchase of defendant stock in the Woodbine Milling Company of the par value of $2,000, to his damage, and that defendant by fraudulent concealment prevented him from obtaining knowledge thereof so that the cause of action was not discovered, and might not have been by the exercise of ordinary diligence, until within five years prior to the beginning of this action. The petition alleged (1) that in making the sale defendant knowingly and with intent to deceive neglected to apprise plaintiff of the indebtedness of the company, and (2) that he knowingly and falsely represented the business was in good shape and would yield an annual dividend of ten per cent. to its stockholders.  There was also an allegation that the actual value of the property did not exceed fifty per cent. of the par value, but no claim was made that anything was said concerning what the property was worth.  In any event, the allegation was incorrect for defendant estimated its value at ''close around $10,000,'' and an attorney, formerly employed by plaintiff to examine the books, testified it to be worth $12,000 or $14,000 in 1903—''a thousand or two more than'' $12,500.  It consisted of a two-story flouring mill at Woodbine on the Boyer river, with capacity of sixty-five barrels per day, with dam, a two-story house, and twenty-five or thirty acres of land.  The Rogers Milling Company held it under contract on which $3,400 was owing a Mrs. Mc-Henry.  That company became involved in debt, and turned the property subject thereto over to the De Cou Brothers. The Woodbine Milling Company was organized and acquired the property in consideration of paying the indebtedness, and out of the proceeds of the sale of stock of the par value of

2. FRAUD: concealment of facts: burden of proof: evidence.

$12,500 during the spring and summer of 1903 satisfied all outstanding obligations except that to Mrs. McHenry. Plainly enough then there could not have been any great disparity between the par value of the stock issued and the actual value of the property acquired by the company.

Nor does there appear any merit in the allegation that defendant withheld information concerning the assumed indebtedness. The undertaking to pay it was the consideration paid for the property acquired, and at the time of the transaction in controversy only the $3,400 owing Mrs. McHenry remained unpaid. This was not mentioned, nor did plaintiff make any inquiries as to what the company owed, or concerning its title to the property. There was no fiduciary relation; they dealt at arm's length, and the record is void of any circumstance which might obviate the application of the doctrine of caveat emptor. *Rothmiller v. Stein*, 143 N. Y. 581 (38 N. E. 718, 26 L. R. A. 148). Were the rule otherwise, a stockholder might not safely dispose of his shares without furnishing the proposed vendee a schedule of obligations of the corporation issuing them. The contract with Mrs. McHenry was a part of the property acquired by the new company, and there was no more reason for describing it, in the absence of inquiry, than the dam or millrace or the manner the business was conducted. The case differs from those where the sale is of the corporation's stock by its officers or by promoters. See *Hubbard v. Weare*, 79 Iowa, 678.

3. SAME.

Nor do we think the alleged representation that the stock would yield an annual dividend of ten per cent., under the circumstances disclosed, anything more than the mere expression of opinion. The company had been organized but a few months, and had declared no dividend, as both parties well knew. What was said concerning dividends and investment was mere puffing, which a vendor is permitted by law to indulge in. *Burwash v. Ballou*,

4. SAME: fraudulent statements: expression of opinion.

230 Ill. 34 (82 N. E. 355, 15 L. R. A. [N. S.] 409);
*Handy v. Waldron,* 18 R. I. 567 (29 Atl. 143, 49 Am. St. Rep.
794). Often men are more confident and enthusiastic over a
business enterprise immediately after organization than in
the light of subsequent experience. This was a case of that
kind. Changes in machinery and necessary improvements
absorbed the profits for years, and then the establishment of a
drainage system, diverting the waters of the Boyer river,
thereby ended the usefulness of the property for milling pur-
poses by water power. The defendant was not at fault in not
being able to foresee all this. He was not a practical miller,
and there is nothing in the record tending to impeach his good
faith, unless it be his inability to detect from the then situa-
tion what might happen in the future. Nor does plaintiff
pretend that what was said was more than opinion. He met
defendant "on the street between the bank and the corner
there. He spoke to me about wanting to know if I would like
to buy some stock in the mill. I told him I didn't know. I
says, 'I thought if it would pay 10 per cent. on the money,
I wouldn't mind taking a little to kind of help the old lady
and I out a little.' He thought it would. He told me to come
over to the bank and talk the matter over. I went to the bank
with him. He talked just as though it was a pretty good in-
vestment, told who was into it, and he thought he was going
to get along fine with it. He said he thought it was going to
pay out all right. He did not say a word to me about their
having taken over any indebtedness at the time the company
was organized." In other words, defendant "thought" the
investment would prove good and yield an income of 10
per cent., but stated no facts upon which such "thought"
was based. The parties appear to have assumed mutual knowl-
edge or information, as well they might, for plaintiff's son-in-
law was in charge of the property as miller, and plaintiff was
familiar with the enterprise. The record is without evidence
from which the inference of bad faith might be drawn.

As there was no proof of fraudulent representations, it is

unnecessary to inquire into the charge of having fraudulently concealed these.

Exception was taken to the refusal of the court to receive portions of the answer in evidence. The ruling was right. Any admissions therein were conclusive against defendant and were not mere matter of evidence. The verdict was rightly directed, and the judgment thereon is *Affirmed*.

5. EVIDENCE: admissions in pleadings.

WEAVER, EVANS, and GAYNOR JJ., concur.