GILDNER BROS., Appellee, v. FORD HOPKINS COMPANY, Appellant.

No. 46359.

.NOVEMBER 14, 1944.

Boardman, Cartwright & Druker, of Marshalltown, for appellant.

F. E. Northup, of Marshalltown, for appellee.

HALE, J.—Appellee, Gildner Bros., is engaged in the clothing business in Marshalltown, and appellant, Ford Hopkins Company, operates a drugstore there. The two firms occupied adjoining places of business. In 1941 Gildner Bros. was about to move two doors to the east and appellant, in order to enlarge its store, made arrangements to lease the property about to be vacated by appellee. The two properties were both owned by the same landlord. It appears that at the time appellant leased the additional store room it also acquired the store front. Appellee was desirous of remodeling the store front at its new location and sought to make arrangements with appellant's agent, one Osborn, to purchase said front in order that it might remove the same and use it in its new location by March 1, 1942. As a result of negotiations the price agreed upon for the salvaged store front was $200, $50 of which was to be paid as a down payment. Thereafter, on November 28, 1941, appellee addressed the following letter to Osborn, in Chicago:

"Marshalltown, Iowa
November 28, 1941

Walter Osborne
400 Erie Street
Chicago, Ill.
Dear Mr. Osborne:

We are enclosing a check for $50.00 as part payment on the salvage of our store front, which per our agreement was to be $200.00.

We would appreciate a letter from you verifying this, so that we may go ahead with our contract.

> Yours very truly,
> Leo Phillips
> Gildner Bros."

Appellant responded by letter, addressed to Gildner Bros. at Marshalltown, as follows:

> "Chicago, Illinois
> December 1, 1941

Gildners Clothing Store
Marshalltown, Iowa
Gentlemen:

This will acknowledge receipt of your letter of November 28th.

I wish to advise that the amount as set up in this letter for the purchase of the Marshalltown store front consisting of the glass, metal stripping, black carrara, window flooring material, window back material, reflectors and window ceiling material is satisfactory and we acknowledge receipt of your payment of $50.00 and shall expect to receive the balance at the time the remodeling work commences at our Marshalltown store. At that time, we will be ready to turn over to you, for your removal, the above mentioned materials.

> Yours very truly,
> FORD HOPKINS Co.
> By W. F. Osborn
> W. F. Osborn"

Appellee had previously been told by appellant's agent that appellant had all the materials necessary for the remodeling and could go ahead with the job and only needed "a couple of steel girders which they knew where they could pick up." Thereafter, about March 6, 1942, appellee removed from the location adjoining Ford Hopkins Company, although its lease on the room did not expire until April 1st. The store front which appellee had purchased not being at that time available, the front at the new location was enclosed in a wooden shed. The only materials appellee had received or taken from the front were some of the light fixtures and wiring.

On March 9, 1942, after the letter received by appellee from Osborn acknowledging receipt of the $50 down payment, appellant wrote to appellee stating its attention had been called to the fact that appellee had been removing parts of the front and claiming that the understanding was that no parts of the front would be removed until Ford Hopkins Company commenced its remodeling, returning to appellee the $50 payment made by it, and requesting appellee to replace the parts of the front already removed by it. It was further stated in the letter that as soon as the remodeling commenced appellant would go into the question of the sale of parts of the front as originally contemplated. On March 10, 1942, appellee sent the check for $50 back to appellant, stating that it could not be accepted. On April 16, 1942, F. E. Northup, attorney for appellee, wrote to appellant at Chicago calling its attention to the alleged contract, again tendering the $50, which appellant already had in its possession, and demanding that it turn over to appellee the property contracted for. The letter further notified appellant if the property was not turned over within five days that he had instructed Gildner Bros. to go into the open market and select like material and collect the cost from appellant. Thereupon new materials were purchased by appellee, which required some time for delivery and the temporary front at the new location continued to stand. Appellee claims that in order to use the old front it had been necessary to obtain the services of an architect, at a cost of $150, to adapt the old front to the new location, which was of a different width. There was other correspondence between the parties after the letters mentioned herein. One letter from appellant to Richard G. Northup and another to F. E. Northup, dated May 1st and April 21st respectively, indicate it was the claim of appellant that it never contemplated beginning the remodeling before May 1st or May 15th and that it had been having trouble in obtaining materials.

On August 28, 1942, action was brought by appellee against appellant for damages in the amount of $999.67 by reason of the failure to deliver the store front. Trial was had to the court and on February 27, 1943, judgment was entered in favor of

appellee, the court making the following findings of fact: (1) That appellee was damaged to the extent of $650 by inability to obtain the store front purchased of appellant within a reasonable time, as contemplated by the contract of purchase, and that the same would have had a utility value for use in remodeling of $650, less the cost of removal, as shown by the testimony to be the sum of $150. (2) That it had been necessary for appellee to employ an architect on account of the difference in the old building and the new location, whose fees were in the sum of $150, which expense was rendered unnecessary by the purchase of a new front, since the glass company furnishing such materials prepared plans free of cost. (3) That appellee was entitled to recover the sum of $50 paid as down payment, less the value of the light fixtures which appellee had received of $25. (4) That the contract of purchase was made with W. F. Osborn, who was the authorized agent of appellant and that appellant recognized his authority and ratified his actions. The court further found that Ford Hopkins Company was aware of appellee's intention to use the store front at its new location and that it would be needed for use at or prior to the time of appellee's removal, and that neither party had in contemplation that delivery should be delayed indefinitely or beyond a reasonable time. The suit, therefore, is on an oral contract between appellee and appellant by its authorized agent, afterward ratified by appellant.

This is an action at law, tried to the court, and the findings of the court should be sustained on questions of fact properly supported by competent evidence. Appellant alleges error of the court in its findings and judgment.

I. Appellant's first assignment of error is that the court was incorrect in allowing damages because of no proof that the contract between the parties, if any, had been breached. The contract claimed by appellee is based on the conversation between Osborn, appellant's agent, and Phillips, of Gildner Bros. There had been some preliminary negotiations in regard to the price and apparently the parties finally agreed upon the sum of $200. It is apparent from the evidence that Ford Hopkins Company was anxious to obtain the use of the room occupied by Gildner Bros. at once, and the conversations which

occurred and the actions of the parties, as shown by the evidence, indicate that it was the understanding that the room then occupied by Gildner Bros. was to be remodeled with such speed as would be practicable, Ford Hopkins desiring to use the room for the extension of its business, and Gildner Bros. being equally desirous of placing its new store in suitable condition for business. Therefore, with such understanding, appellee wrote the letter of November 28th, enclosing the check for $50, and, with like understanding, Ford Hopkins Company acknowledged receipt of the down payment and verified the oral contract entered into by its agent, Osborn. We do not think the statement in regard to the time at which the materials were to be delivered modifies the oral contract between the parties, of which there was evidence before the court, in view of the understanding of the parties. The letter written by appellee did not constitute the contract so much as a verification of the arrangement theretofore made by appellant's agent.

Appellant argues that appellee's silence sustained its contention that its letter expressed the true agreement of the parties. Such is not the conclusion of the court and we are inclined to agree. Appellee was satisfied when it received appellant's letter of December 1st, which was in compliance with its desire for verification by appellant.

Appellant further argues that there was no breach of any contract between the parties because under the terms of the contract delivery was to be made when Ford Hopkins started to remodel. The arrangement made with appellant's agent does not bear out this argument. The court was justified in finding that appellee could not have intended, nor could appellant have expected, that the delivery of the front would be, or could be, postponed to an indefinite time in the future, when both parties were apparently anxious to complete the removing and remodeling as soon as possible, and that the mention of time in the letter acknowledging receipt of the $50 check neither added to nor took away anything from the original contract made orally with appellant's agent. In construing this contract we must necessarily take into consideration the circumstances surrounding both parties at the time, and we

therefore hold that the court in its holding as to this point was supported by the evidence.

II. Appellant again, in Division II of its argument, urges that the acquiescence of appellee upon receipt of the letter from it is evidence that appellee was informed of the construction placed on the transaction by appellant, and yet nothing was said for three months. As we have already stated, appellee did not know, or would have had no reason to know, from the negotiations previously entered into with appellant, that there was any misconstruction of the contract. We refer again to the fact that both parties were apparently anxious to proceed at once with the change in their places of business and that appellee had been assured that appellant had the materials necessary for the remodeling. Under these circumstances there was no reason for appellee to think that the construction placed upon the contract was different from that which appellee itself placed upon it.

III. Appellant objects to the measure of damages adopted by the court. Judgment was allowed in the sum of $650, itemized by the court in its findings as damages on account of inability to obtain the store front within a reasonable time, less $150, the cost of removal, as shown by the testimony, to which the court added the $150 expense of employing an architect and the $50 already paid, less $25 for fixtures already received by appellee.

Appellant argues that the correct measure of damages was the difference between the contract price and the reasonable market value. There was evidence that such a front had no market value, and that if the front in question could have been utilized in the construction of a new front at appellee's new location it would have been worth $600 or $700. There was also testimony that material purchased new for the construction of the new front amounted to about $700. In other words, if the contract had been complied with, the cost of construction of the front at the new location would have been about $600 or $700 less and it would have been necessary to employ an architect. It is true that the measure of damages is ordinarily the difference between the contract price and the market price, but where materials cannot be bought on the market

there can be recovery for the reasonable profit lost by the breach of contract. See Iowa Brick Mfg. Co. v. Herrick, 126 Iowa 721, 724, 102 N. W. 787; and Laporte Improvement Co. v. Brock, 99 Iowa 485, 488, 68 N. W. 810, 811, 61 Am. St. Rep. 245, where it is said:

"The general rule does not apply where the property contracted for, is designed for a special purpose, known to the seller, and cannot be readily procured in the market."

See, also, City of Corning v. Iowa-Nebraska L. & P. Co., 225 Iowa 1380, 1388, 282 N. W. 791, and cases cited. The general rule for damages where there is no market value is such as may fairly and reasonably be considered as arising naturally, and according to the usual course of things, from the breach, or such as may reasonably be supposed to have been in contemplation of both parties at the time when the contract was made, as a probable result of the breach thereof. In re Estate of Hager, 212 Iowa 851, 863, 235 N. W. 563; City of Corning v. Iowa-Nebraska L. & P. Co., supra.

Appellant refers to the fact that the front was secondhand material. It had been used in appellee's former store for five years. The evidence showed that practically all the front was to be used, and could be utilized, in the new location, and the fact that new material was used in place of old material would not tend to reduce the damages, since there was no secondhand market and the only materials which could be purchased were new, as the evidence indicates. Further, had the contract been complied with, the $150 for architect's fee would have been necessary, but there was evidence which showed that in the purchase of new material plans and specifications for installation were furnished. Therefore, the service of the architect in contemplation of the adjustment of the old front to the new location was lost by reason of the breach of appellant's contract. We are satisfied that the court's finding of damages was correct.

IV. At the conclusion of the testimony in the trial of the case, and after argument of defense, appellee sought and obtained permission to amend the pleadings to conform to the proof. Appellant objected and was overruled.

The amendment related only to the claimed damages, including breach of contract, expense of the architect, loss of business and depreciation in rental value of the store room, the return of the down payment of $50, and withdrew an itemized claim of damages sustained by not receiving the old front. The difference in the claims was that instead of listing the items going to make up the front, as in the original petition, the amendment substituted the front itself. The original petition also claimed damages for the expense of the architect, and, as in the amendment, claim for loss of use of appellee's store windows, the amendment substituting four weeks instead of six, as stated in the original petition. The finding of the court shows what damages were finally allowed. We do not think the court abused its discretion in overruling appellant's motion to strike this amendment, which did not differ substantially from the original claim of damage. The court could have permitted the amendment on terms, but did not think, nor do we think, it necessary to require any terms in its permission to make the amendment. No new issue was raised and the amendment did not change the claim or defense but merely conformed the pleadings to the facts proved, and this is permissible.

V. The only other error assigned is that the court erred in permitting the witness Jacobson, who completed the new front, to testify that the saving, if he had been permitted to use the old front, would have been $600 or $700. We see no reason why the witness should not have been permitted to testify as to this question which was material to the inquiry.

We are satisfied that the assessment of damages by the court was correct, and that the judgment in favor of appellee, in view of the evidence, should be, and is, affirmed.—Affirmed.

All JUSTICES concur.