Donald J. WOODS and Lola Jean Woods, Appellants,

v.

Richard SCHMITT, Marguerite Schmitt, Defendants,

Thorp Sales Corporation; J.G. Johnson; Saur & Johnson—Attorneys at Law; Richard L. Donohue; Thorp Credit, Inc.; Thorp Finance Corporation of Wisconsin; and ITT Thorp Corporation, Appellees.

No. 87–549.

Supreme Court of Iowa.

April 19, 1989.

Rehearing Denied May 11, 1989.

As Amended on Denial of Rehearing May 19, 1989.

---

Michael F. Lacey, Jr. and Ronald M. Rankin, Des Moines, and Larry F. Woods, Oelwein, for appellants.

William H. Carmichael, Cedar Rapids, for appellees, J.G. Johnson and Saur & Johnson, Attys. at Law.

William H. Roemerman of Crawford, Sullivan, Read & Roemerman, Cedar Rapids, for appellee, Richard L. Donohue.

Mark E. Schantz and Jon P. Sullivan of Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for appellees, Thorp Sales Corp., Thorp Credit, Inc., Thorp Finance Corp. of Wisconsin, and ITT Thorp Corp.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, NEUMAN, and ANDREASEN, JJ.

SCHULTZ, Justice.

In the present case, defeated litigants in an earlier action seek to recoup their losses. On December 12, 1974, plaintiffs Donald J. and Lola Jean Woods signed an offer to purchase a 285–acre Clayton county farm for $90,000. The offer was accepted and the Woods took possession. However, the vendors, Richard and Marguerite Schmitt, had previously sold the farm in 1971. Between the two sales Schmitts' mortgage was foreclosed and I.T.T. Thorp purchased the property at the sheriff's sale. Woods obtained title by a sheriff's deed after the sheriff's certificate of sale was assigned to them. The initial vendees brought an action for specific performance and to quiet title. Following numerous appeals to this court, the Woods were dispossessed of the farm and held liable for damages. *See Moser v. Thorp Sales Corp.*, 256 N.W.2d 900 (Iowa 1977) (Moser I); *Moser v. Thorp Sales Corp.*, 312 N.W. 2d 881 (Iowa 1981) (Moser II); *Moser v. Thorp Sales Corp.*, 334 N.W.2d 715 (Iowa 1983) (Moser III); *see also Neylan v. Moser*, 400 N.W.2d 538 (Iowa 1987) (Moser IV). The detailed facts set forth in the prior appeals reveal the background for the present action.

Plaintiffs' amended petition sought relief from several parties. We list only those counts relevant to this appeal. Count I of the petition was directed against the Schmitts and the Schmitts' lawyer, Richard L. Donohue, seeking recovery under a covenant of warranty and for "bad faith conveyance" of the real estate to Woods. In counts II and III, plaintiffs alleged legal malpractice and breach of contract against their lawyer, J.G. Johnson, and his law firm, Saur & Johnson (collectively referred to as Johnson), who had examined the abstract of title to the real estate. Count IV asserted a "bad faith conveyance" theory against Thorp Credit Inc., Thorp Finance Corp. of Wisconsin, Thorp Sales Corp., and I.T.T. Thorp Corp. (hereinafter collectively referred to as Thorp). Several of these corporations had individually financed Schmitts, assisted in the initial sale of the farm, foreclosed the mortgage, purchased the property at sheriff's sale and subsequently sought punitive damages from Johnson and Donohue in addition to the actual damages sought in counts I, II and

III. Finally, count VI requested actual and punitive damages from Donohue for fraud.

Thorp filed various motions to dismiss count IV, which Judge C.W. Antes sustained. Because the Schmitts neither appeared, nor answered Woods' petition, a default judgment was entered against them. Judge Carl D. Baker ruled on the other pertinent pretrial motions and presided at the jury trial involving the remaining parties.

In addition to the present case, an additional action captioned *Federal Land Bank of Omaha v. Woods* remains pending. Federal Land Bank is seeking recovery of the loan made to Woods to finance the farm purchase price. Woods counterclaim that Federal Land Bank committed acts and omissions which induced them to purchase, and eventually lose, the farm. Donohue and Johnson unsuccessfully sought to consolidate these cases.

In the jury instructions, the trial court submitted four of plaintiffs' claims. As to Johnson, the breach of contract for legal services and negligence claims were submitted. Against Donohue, the court submitted claims for breach of the contract warranting title and fraud in the sale of the farm. The court also submitted the issue of punitive damages against Donohue, but only on a finding of fraud. Additionally, Johnson's and Donohue's affirmative defenses of the statute of limitations on the negligence and fraud claims were submitted.

The jury found against Johnson and Donohue on each theory of recovery submitted. On Johnson's negligence count, the jury was required to apportion the total combined negligence between the Woods, and Johnson. They attributed 35% of the negligence to Donald Woods, 0% to Lola Jean Woods, and 65% to Johnson.

The court submitted a single verdict form to assess damages against both Johnson and Donohue. The jury completed the form as follows:

For a return of purchase price of the farm: $ 0.

For the cost of defending title to the farm: $32,200.

For rent paid by the Woods to the Mosers for 1975, 1976 and 1977: $12,500.

For improvements made to the farm by the Woods: $10,069.

For punitive damages against Donohue: $37,500.

The verdict form also required the jury to answer an interrogatory if it found Johnson liable. The interrogatory and its answer stated:

Of the total amount of damages assessed against Johnson and Donohue, the jury finds that the damages to be assessed against Johnson for negligence are as follows: $13,692.25.

An order was entered awarding plaintiffs judgment against Schmitts, Johnson and Donohue. The judgment against the three parties was later modified to reflect precommencement interest.

Plaintiffs' appeal attacks the dismissal of Thorp and asserts numerous errors in the awarding of damages. Donohue appeals the award based on the fraud count, the punitive damages and the allowance of additional interest. Finally, Johnson appeals both verdicts against him. We shall first review the claims asserted on each theory of recovery and then discuss the damages issues.

I. *Thorp.* Plaintiffs urge that the district court erred in dismissing their action against the various Thorp entities. They claim they were damaged when Thorp undertook to transfer its interest in the real estate via the assignment of a sheriff's certificate. Thorp maintains the trial court's pretrial dismissal was correct.

Our review of a motion to dismiss ruling is narrow. Generally, a motion to dismiss must stand or fall solely on matters alleged in the petition, except those facts of which judicial notice may be taken. *Reidiger v. Marrland Dev. Corp.*, 253 N.W.2d 915, 916 (Iowa 1977); *see Berger v. General United Group, Inc.*, 268 N.W.2d 630, 634 (Iowa 1978). A motion to dismiss admits the well-pleaded facts for the purpose of testing their legal sufficiency. *Berger*, 268 N.W.2d at 634. It should be sustained only when it appears to a certainty that the

pleader has failed to state a claim upon which any relief may be granted under any state of facts which could be proved. *Haugland v. Schmidt*, 349 N.W.2d 121, 123 (Iowa 1984).

Our first search is to determine whether plaintiffs have stated a claim upon which any relief may be granted. In their appellate brief, plaintiffs are rather vague as to the theory of recovery which entitles them to relief. They allege that Thorp acted in bad faith in the execution of the assignment and failed to convey title in fee simple to them. They further state that they were attempting to allege bad faith in accordance with the case of *Foley v. McKeegan*, 4 Iowa 1 (1856).

Examination of plaintiffs' petition and its attached exhibits indicates no claim that they had an express agreement with Thorp. Instead, plaintiffs allege an agreement existed between Thorp and Schmitts which settled Thorp's foreclosure action and Schmitts' counterclaims. As a part of that agreement, Thorp was to deliver to Schmitts' attorney an assignment of the sheriff's certificate in which the name of the assignee was left blank. The agreement, in turn, required Schmitts to pay Thorp the amount due on the foreclosure judgment. Plaintiffs assert that they relied on the assignment, paying $90,000 for it. They acknowledge that Schmitts and their attorney, rather than Thorp, warranted that the sheriff's deed would provide them good title to the property.

Thorp maintains that plaintiffs' petition sought recovery on a theory of bad faith conveyance. It supports the trial court's dismissal on the grounds that the property was conveyed to plaintiffs by Schmitts, rather than by Thorp. They point to *Moser II* wherein we held that plaintiffs "are purchasers from Schmitts and not assignees of ITT Thorp." *Moser II*, 312 N.W.2d at 889. Although we agree that the trial court can properly take judicial notice of the decisions of this court, *Mathews v. Turner*, 212 Iowa 424, 432, 236 N.W. 412, 415 (1931), we need not address the validity of Thorp's contention because we believe simpler principles answer the propriety of the dismissal.

■ If we assume that plaintiffs acquired rights against Thorp when Lola Jean Woods' name was placed on the assignment as the assignee, what rights to plaintiffs now claim? The assignment gave her a right to receive a sheriff's deed. However, plaintiffs admit that they acquired the sheriff's deed and took possession of the land. Plaintiffs' damages arose when they were dispossessed because of not having good title. Their stated cause of action against Thorp is centered on the assignment failing to convey title in fee simple. Stated otherwise, plaintiffs' claim is nothing more than a breach of warranty of title. Yet no one contends the assignment expressly warranted title. Consequently, the narrow issue remaining is whether the assignment of a right to a sheriff's deed impliedly warrants title.

■ Accepting the pleadings as true, we conclude that Thorp's assignment did not create an implied warranty of title. The assignment merely transferred Thorp's rights to a sheriff's deed. A sheriff's deed does not warrant title, nor may a covenant be implied from its words of grant. 7 S. Williston, *Williston on Contracts* § 775 (3d ed. 1963). As a general rule, covenants of title will not be implied from the conveyance of property. 21 C.J.S. *Covenants* § 9 (1940). Our case law has long held that in the absence of covenants, there is no warranty of title and, absent fraud, the purchaser is without remedy. *Nelson v. Hamilton County*, 102 Iowa 229, 232, 71 N.W. 206, 207 (1897); *Allen v. Pegram*, 16 Iowa 163, 172 (1864); *Brandt v. Foster*, 5 Iowa 287, 291–92 (Clarke ed. 1857).

■ No valid cause of action for fraud is indicated here. The pleadings and attachments show that Thorp and plaintiffs did not negotiate the assignment. There is no claim that Thorp made a material misrepresentation with intent to deceive plaintiffs, an element of fraud. *See Sinnard v. Roach*, 414 N.W.2d 100, 105 (Iowa 1987). Although plaintiffs did allege bad faith, they did so relying upon the authority of *Foley*. In *Foley*, plaintiff's action was for

breach of contract to convey real estate when the vendor refused to convey. This action was specifically distinguished from the class of cases involving covenants of warranty. *Foley*, 4 Iowa at 9. The *Foley* rule simply recognizes that the vendor of real estate who breached the contract to convey, may be held liable for additional damages if at fault or acting in bad faith. *Id.* at 10. The bad faith allegation in this context falls short of an accusation of fraud. Because plaintiffs' pleadings do not state a cause of action, the dismissal was proper.

Because we find the trial court properly dismissed this count, we need not address Thorp's claim of issue preclusion. Additionally, we find no merit in the other issues raised by plaintiffs concerning the trial court's ruling on the motion.

II. *Donohue's Breach of Covenant of Warranty.* During the closing of the real estate sale with plaintiffs in March of 1975, Schmitts and their attorney, Richard L. Donohue, executed a written covenant to warrant title to the premises. After their unsuccessful litigation culminated in *Moser III*, plaintiffs sought to enforce the covenant as a separate count in this action. The jury held for the plaintiffs. On appeal, plaintiffs challenge the measure of damages. Donohue does not contest the judgment and claims the trial court did not err in adjudicating and instructing the jury on the measure of damages recoverable for breach of warranty. We will later review the damage issues.

III. *Donohue's Fraud.* Plaintiffs' petition contained a separate count against Donohue, charging him with fraud for false representations made with the intent to deceive plaintiffs into expending money to purchase the real estate. Donohue pled the affirmative defense of the statute of limitations. In response to this affirmative defense and Donohue's motion for summary judgment, plaintiffs amended their pleadings to allege that Donohue engaged in affirmative acts to conceal the fraud, thereby disabling plaintiffs from discovering the fraud during the period of limitations. The trial court submitted issues of

fraud, the statute of limitations and plaintiffs' claim of concealment. The jury returned a verdict for the plaintiffs against Donohue.

On appeal, Donohue claims that the evidence shows, as a matter of law, that the fraud action was barred by the statute of limitations. *See* Iowa Code § 614.1 (1981) (5–year period of limitations for a fraud action). Donohue asserts that the latest possible date for the commencement of the limitation period is the real estate closing date of March 24, 1975. The suit was not filed until 1981, six years later, and the fraud count was not added until the 1985 amendment of the petition. Donohue preserved error on this issue by a motion for directed verdict, objection to the instructions and post-trial motions.

■ The general rule is that a cause of action for fraud accrues and the statute of limitations begins to run when the fraud is consummated. *McGrath v. Dougherty*, 224 Iowa 216, 223, 275 N.W. 466, 470 (1937); *Smith v. Middle States Util. Co.*, 224 Iowa 151, 157, 275 N.W. 158, 162 (1937); *Wagner v. Standard Seed Tester Co.*, 194 Iowa 1330, 1332, 191 N.W. 314, 315 (1922). For fraud in the sale of property, the action accrues at the time of sale. *McGrath*, 224 Iowa at 224, 275 N.W. at 471; *Wagner*, 194 Iowa at 1332, 191 N.W. at 315.

In this case, the court instructed the jury, without objection, that any fraud was consummated on the March 24, 1975, real estate closing. The court further instructed that Donohue's statute of limitations defense must prevail unless the Woods established their affirmative claim of fraudulent concealment. We agree with the trial court's assessment that as a matter of law, the defendant had established the statute of limitations defense unless plaintiffs proved their claim of fraudulent concealment by Donohue.

In plaintiffs' fraud action against Donohue, the fighting issue arises out of plaintiffs' claim that Donohue fraudulently concealed this cause of action. The common law doctrine of fraudulent concealment is a separate concept from the more recently-

adopted discovery rule as announced in *Chrischilles v. Griswold,* 260 Iowa 453, 463, 150 N.W.2d 94, 100 (1967). *In re Estate of Thompson,* 346 N.W.2d 5, 7 (Iowa 1984). Fraudulent concealment was announced in *District Township of Boomer v. French,* 40 Iowa 601 (1875), wherein we stated "where the party against whom a cause of action existed in favor of another, by fraud or actual fraudulent concealment prevented such other from obtaining knowledge thereof, the statute would only commence to run from the time the right of action was discovered, or might, by use of diligence, have been discovered." *Id.* at 603.

We still recognize this rule. *Koppes v. Pearson,* 384 N.W.2d 381, 386 (Iowa 1986); *Pride v. Peterson,* 173 N.W.2d 549, 555 (Iowa 1970); *McGrath,* 224 Iowa at 224–25, 275 N.W. at 471. In *Pride,* we required the plaintiffs to allege and prove 1) the party against whom the cause of action exists did some affirmative act to conceal the cause of action, and 2) that plaintiffs exercised due diligence to discover the cause of action. 173 N.W.2d at 555.

The trial court presented the issue of fraudulent concealment to the jury for consideration. However, Donohue claims that there was insufficient evidence to make a jury question on the issue. We are bound by the familiar rule that the trial court should submit all issues pleaded which are supported by substantial evidence. *Hoekstra v. Farm Bureau Mut. Ins. Co.,* 382 N.W.2d 100, 107 (Iowa 1986).

■ The doctrine of fraudulent concealment requires proof of affirmative steps independent of, and in addition to, the original wrongdoing to prevent plaintiffs from discovering the wrong. 54 C.J.S. *Limitation of Actions,* § 90(c), at 130–31 (1987); *McDaniel v. La Salle Ambulance Serv., Inc.,* 108 Ill.App.3d 1042, 1045, 64 Ill.Dec. 606, 608, 440 N.E.2d 158, 160 (1982); *Owen v. King,* 130 Tex. 614, 619, 111 S.W.2d 695, 697 (Tex.Civ.App.1938); *Cole v. Hartford Accident Indem. Co.,* 242 Iowa 416, 426, 46 N.W.2d 811, 817 (1951). The acts of concealment must take place after the cause of action accrued. *Owen,* 130 Tex. at 614, 111

S.W.2d at 697. We noted in *Cole* that when the alleged concealment was the essence of the original fraud charge, "to hold such failure also amounted to fraudulent concealment of plaintiff's alleged cause of action, would in effect, wipe out the statute of limitations." 242 Iowa at 428–29, 46 N.W.2d at 818. With these principles in mind, we turn to the record to determine whether plaintiffs presented substantial evidence of fraudulent concealment.

■ Plaintiffs contend that Donohue's actions presented substantial evidence of fraudulent concealment. They assert the evidence revealed Donohue had been engaged in a number of secret dealings concerning the property from October 1974, when he conceived the scheme of foisting the property upon some unsuspecting purchaser through the guise of a conveyance from ITT Thorp Corporation. They point to many of Donohue's acts during that period up to the March 24, 1975, closing. These acts were part of the essence of the original fraud charge, rather than independent subsequent acts of fraudulent concealment. We therefore cannot consider them.

Plaintiffs do set out two acts that occurred after the fraud action had accrued. They point to statements by Donohue at a contempt hearing on July 8, 1975, and to a brief he filed in the Moser litigation on June 5, 1975. On both of these occasions, Donohue took the position that Schmitts' right of redemption had expired in December of 1974. We believe these acts are not evidence of fraudulent concealment.

Donohue's statements, at the hearing and in his briefs, are merely a repetition of the earlier misrepresentation. Generally, a denial of wrongdoing is insufficient to prove concealment. 54 C.J.S. *Limitation of Action,* § 90(c), at 131 (1987). We held in *McGrath* that repeating the fraudulent misrepresentation first made in a bond issue, in later bond issues, was not concealment of the original misrepresentation and fraud. 224 Iowa at 224, 275 N.W. at 471. A reaffirmance or repetition of the alleged fraudulent statements after the consummation of the fraud does not constitute an act of fraudulent concealment. 37 Am.Jur.2d

*Fraud and Deceit* § 414, at 562 (1968). At most, Donohue's statements were the same misrepresentations that he made in the commission of the original fraud. They were not new and independent acts that tended to conceal the original fraud.

■ After the real estate closing, Donohue's only direct encounter with plaintiffs involved a brief discussion involving property taxes on the real estate. There is no evidence of trick or artifice by Donohue to conceal his previous deceit. In the absence of a fiduciary relationship, mere silence by the wrongdoer does not constitute fraudulent concealment. *Conklin v. Towne*, 204 Iowa 916, 921, 216 N.W. 264, 267 (1927).

We believe this case is distinguishable from other cases where we held there was evidence of fraudulent concealment. In a fraud action involving the sale of stock, we held a jury question was engendered on fraudulent concealment when the defendant subsequently told plaintiff the company was doing a profitable business and that the stock had increased in value. *Reinertson v. Consolidated Chemical Prod. Co.*, 205 Iowa 417, 421–23, 216 N.W. 68, 69–70 (1927). In a similar action for fraud in the sale of stock by a corporation and its officers, we held that there was a fact question on fraudulent concealment when a corporation that had never made any profits, one year after the sale, circulated a letter saying that substantial dividends had been paid, large additions made to surplus and that the officers drew no salary for their services. *Pullan v. Struthers*, 201 Iowa 1179, 1182–83, 207 N.W. 235, 236–37 (1926). Additionally, we have held in cases involving a confidential or fiduciary relationship between the person concealing the cause of action and the aggrieved party, that mere silence is actionable. *Pride*, 173 N.W.2d at 555; *Cole*, 242 Iowa at 426–27, 46 N.W.2d at 817. The present case involves neither an active cover-up of the original fraud nor a fiduciary relationship.

We can only conclude that there is no evidence of acts of fraudulent concealment. Under such circumstances, defendant was entitled to a directed verdict. *Cole*, 242 Iowa at 428–29, 46 N.W.2d at 818; *McGrath*, 224 Iowa at 226, 275 N.W. at 472; *Benedict v. Hall*, 201 Iowa 488, 492–93, 207 N.W. 606, 607–08 (1926); *Gamet v. Haas*, 165 Iowa 565, 568, 146 N.W. 465, 466 (1914).

In view of our holding, we need not discuss Donohue's other claims of issue preclusion and that plaintiffs discovered the fraudulent act more than five years prior to the filing of their petition.

IV. *Johnson's Breach of Contract.* In their action against Johnson, plaintiffs allege separate theories of recovery grounded on breach of contract for legal services and negligence. Both theories concern Johnson's examination of the abstract and his representation of plaintiffs at the real estate closing. The court submitted both theories of recovery to the jury, resulting in plaintiffs' verdicts on both counts. In this division we review only the contract action.

The court instructed the jury on plaintiffs' burden of proof regarding their claims of breach of contract. On appeal, Johnson urges that he would not have passed title but for Donohue's fraud. He asserts the fraud was the intervening or sole cause of plaintiffs' damages. Johnson also claims that he established, as a matter of law, his affirmative defense that the action was premature. We find no merit in either contention warranting reversal.

A. *Causation.* Johnson does not attack the merits of submitting the breach of contract theory. We have long recognized that a lawyer's obligation to the client may involve a duty arising out of an employment contract. *See Thomas v. Schee*, 80 Iowa 237, 241, 45 N.W. 539, 540 (1890). The lawyer impliedly contracts to exercise reasonable care, skill and diligence that the title was as stated. *Id.* at 241, 45 N.W. at 540.

The jury instructions placed the burden on the plaintiffs to show Johnson caused plaintiffs' damages by his breach of the contract. Johnson claims that the jury's finding that Donohue committed fraud constituted the sole proximate cause or superseding cause of plaintiffs' damages as a matter of law.

Generally, questions of proximate cause are for the jury; it is only in exceptional cases that they may be decided as matters of law. Iowa R.App.P. 14(f)(10). We believe that a jury question existed.

■ The jury was to decide whether Johnson breached the contract by failing to properly perform his abstract examination and to represent plaintiffs in the real estate closing. His duty was to insure plaintiffs that they had a merchantable title. A merchantable title is one which a reasonable, prudent person would accept in the ordinary course of business after being fully apprised of the facts and the applicable law. *See Holliday v. Arthur,* 241 Iowa 1193, 1196, 44 N.W.2d 717, 719 (1950); *Bristow v. Pagano,* 238 Iowa 1075, 1079, 29 N.W.2d 423, 425 (1945). Little discretion is allowed when a lawyer knows that the real estate is involved in litigation to determine the title. A noted author states:

> An attorney undertaking to examine title is not liable for an error in judgment, unless it results from the failure to exercise ordinary skill and knowledge....
>
> An attorney in examining title functions as an advisor, a different role than the advocate in handling litigation. In litigation, an attorney is often warranted in taking chances. The attorney who undertakes to advise a client whether the title is marketable, however, has no such discretion. If there is any reasonable doubt of the sufficiency of the title, the attorney who unilaterally attempts to resolve the doubt does so at his own peril.

2 R. Mallen and J. Smith, *Legal Malpractice* § 25.8, at 570–72 (3d ed. 1989) (citations omitted).

■ Johnson knew of the pending specific performance and quiet title actions when he passed title. It was a cloud on the title. Donohue's fraud may have misled him into believing ITT Thorp had legal title to the property rather than the litigants. However, the jury could have concluded that Johnson's acts in passing title and closing the real estate deal, in the face of pending litigation, was a breach of the contract, resulting in plaintiffs' damages. Consequently, we believe the trial court

was not in error for failing to hold as a matter of law that Donohue's fraud was the intervening cause to plaintiff's damages.

■ B. *Prematurity of Action.* Johnson next alleges the affirmative defense that plaintiffs' action against him was premature and should only be commenced after the conclusion of this action and the separate case between the Federal Land Bank and plaintiffs. Johnson did not ask the trial court to separate the trials pursuant to Iowa Rule of Civil Procedure 186. Rather, he waited until the judgment had been entered and then filed a post-trial motion, which the trial court denied.

On appeal, Johnson argues that plaintiffs have not actually sustained any loss due to his malpractice because they successfully recovered against Donohue. He contends that plaintiffs have not proved that they have been damaged by his actions. In a legal malpractice claim grounded on negligence, we recently discussed proof of causation and the requirement that a plaintiff show what was lost as a result of the lawyer's negligence. *Burke v. Roberson,* 417 N.W.2d 209, 211–13 (Iowa 1987). This includes a showing of the money or rights that the plaintiff would have collected in the absence of the lawyer's negligence, which we referred to as proof of "collectibility." *Id.* at 212. We also indicated that it was a rare case in which the issue of collectibility is so clear that it can be decided as a matter of law. *Id.* at 213.

Under these facts, where Johnson passed title after examining the abstract and participated in closing the real estate contract, he suggests that plaintiffs should be required to show collectibility in proving proximate cause. Here, plaintiffs have shown that the title was unmerchantable and that they suffered losses from the deprivation of the property and incurred other expenses. Johnson's claim of prematurity is an affirmative defense stating that he had protected plaintiffs by requiring a warranty of title from Donohue and that plaintiffs must first seek recovery from Donohue.

If Johnson wanted this issue submitted for a factual determination, he failed to preserve error. He admits in his brief that he raised the matter for the first time in his post-trial motion. We conclude that the issue of prematurity in this case cannot be properly adjudicated in a post-trial motion. After the trial was over, the court was in no position to either separate the trials or more fully instruct the jury on collectibility as part of plaintiffs' burden to prove causation and damages. The trial court properly denied Johnson's post-trial motion on this issue.

This is not to say that Johnson may not have an alternative remedy. We do not pass on whether Johnson may bring an equitable action against Donohue or the Federal Land Bank or whether Johnson will become subrogated to plaintiffs' interests by satisfying the judgment entered in this action. *See Tilly v. Doe*, 49 Wash.App. 727, 746 P.2d 323, 326–27 (1987).

■■■ V. *Johnson's negligence.* The trial court also submitted the issue of Johnson's negligence in his representation of plaintiffs. The plaintiffs and Johnson claim numerous errors in the submission of this count and the jury's allocation of fault and valuation of damages. As we shall discuss later, plaintiffs did not preserve error on any claim that recoverable damages were greater under the negligence theory than under the contract theory. Consequently, any recovery under the negligence action would at best duplicate the recovery under the contract action against Johnson. Plaintiffs are entitled to but one recovery from Johnson. *See Dungy v. Benda*, 251 Iowa 627, 634, 102 N.W.2d 170, 174 (1960), *overruled on other grounds*, *Community School Dist. v. Gordon N. Peterson, Inc.*, 176 N.W.2d 169 (Iowa 1970). Consequently, a discussion of the issues under this theory of recovery is unnecessary.

VI. *Damages.* The respective parties' claims on the proper measure of damages typify the acrimony and misjudgment that has possessed the parties and their lawyers throughout the litigation arising from the sale and resale of this farm. At this time, we attempt to finally lay these matters to rest.

Long before the matter came to trial, the parties filed pretrial motions to adjudicate law points pursuant to Iowa Rule of Civil Procedure 105 concerning various items of damages. These parties strongly sought these determinations in an effort to reduce the issues for trial. The trial court reluctantly made a pretrial ruling, limiting plaintiffs' damages to the purchase price of $90,000 plus interest and reasonable attorney fees. At that time, the court struck down any claims on the loss of improvements, the loss of the use of the farm during 1975 through 1977, lost rents from 1977 to 1981 and additional damages for the time spent in defending the specific performance action. We believe that the trial court acted in error.

■■■ An application for separate adjudication of law points is properly considered only when the questions of law arise from uncontroverted facts which appear in the pleadings. *Thompson*, 346 N.W.2d at 7. Our review of the motions and accompanying briefs indicate that the facts concerning liability and damages relied upon by the parties in asserting the various theories of recovery were in dispute at that time. The motions should have been denied.

At trial, plaintiffs attacked the restrictions on their proof of damages. The court relented. Contrary to its earlier ruling, it informed all of the parties that evidence would be admissible on these matters and that it would decide at the conclusion of the trial which damages would be submitted to the jury for consideration. Donohue and Johnson objected, claiming that the earlier ruling defined the law of the case and the court could not subsequently change its ruling. The trial court, however, correctly altered it course by correcting its own error.

■■■ Although rule 105 provides that adjudicated points of law "shall not be questioned on trial or any part of the case of which it does not dispose," we do not interpret that language to mean that a trial court cannot correct an error. The law of

the case doctrine dictates that once a decision is final, it continues to be the law of the case between the same parties, whether correct on general principles of law or not. 21 C.J.S. *Courts* § 195(a) (1940). However, this is a rule of practice and not a principle of substantive law. *Id.* This court has stated that the doctrine merely expresses "the practice of courts to refuse to reconsider what has once been decided." *In re Estate of Hermence*, 235 Iowa 745, 749, 15 N.W.2d 905, 907 (1944). We have indicated that it is more important to apply a correct interpretation of a statute than to rigidly adhere to the law of the case doctrine. *Id.* at 749, 15 N.W.2d at 907; *see also La Sell v. Tri–States Theatre Corp.*, 235 Iowa 492, 505, 17 N.W.2d 89, 95 (1945) (court has power to correct a prior decision when convinced it was wrong although the former decision must not be treated lightly).

■ Furthermore, the trial court complied with the requirement that it must prepare written instructions on all material issues in the case, furnish counsel with a copy, and grant counsel the opportunity to make objections. Iowa R.Civ.P. 196. The rule provides that "all objections to giving or failing to give instructions must be made ... specifying the matter objected to and on what grounds. No other grounds or objections shall be asserted thereafter, or considered on appeal." We consider the rule to be unequivocal. Objections not timely made will not be considered on appeal. *Tarrell v. Erdmann*, 221 N.W.2d 504, 507 (Iowa 1974). We conclude that it was not error for the trial court to correct its previous error when all parties received fair warning and a full opportunity to present evidence on all of the issues.

■ In the present case, the trial court announced that it would consider the damage issues after the proof was submitted. The court's subsequent determination of the proper measure of damages is reflected in its instructions to the jury. The parties were given the opportunity to object to these instructions. This was the trial court's only opportunity to correct error. On appeal, we only consider those issues on

damages which were properly preserved by objections to the instructions.

As indicated in our statement of facts, the jury completed a verdict form determining damages against Johnson and Donohue for three items. The sum of these three items was $54,769. The trial court entered an order awarding plaintiffs' judgment against Schmitts, Johnson and Donohue for the sum of $49,976.71, and an additional sum of $37,500 against Donohue for punitive damages.

The trial court's judgment reduced the sum of the verdicts by $4,792.29. We find no explanation in the record or briefs as to why the court reduced the amount of the verdict in its judgment. We note that the included interrogatory contained the jury's determination that Johnson was to be assessed the sum of $13,692.25 for negligence, and that 35% of this sum equals the amount of the reduction. Because the parties did not address this reduction in either their post-trial motions or on appeal, we accordingly do not consider it.

■ A. *Breach of Warranty Damages.* Plaintiffs claim that the trial court's instruction regarding Donohue's breach of covenant of warranty of title improperly limited the damages recoverable for loss of the farm. They maintain the measure of damages for breach of warranty of title must be determined with reference to the breaching party's conduct, as well as the damages sustained by the disappointed purchaser. Plaintiffs assert they should have been allowed to recover the value of the property measured at the eviction date or, in the alternative, on the date their interest in the realty was completely extinguished by *Moser II.* Donohue urges there was no error on the issue of damages.

In the warranty agreement, Donohue and Schmitts covenanted with Lola Jean Woods that the sheriff had authority to sell the real estate and that the deed:

is of the same force and affect as a warranty deed ... and that said real estate is free and clear of all liens and encumbrances whatsoever and first parties covenant to warrant and defend the said premises against the lawful claims

of all persons pursuant to the deed of said sheriff.

Donohue had neither possession nor title to the real estate.

Where there has been a complete failure of title, the measure of damages is the value of the property at the time the covenant was made as determined by the consideration paid, rather than the land value at time of eviction. 20 Am.Jur.2d *Covenants* § 133, at 691 (1965); 21 C.J.S. *Covenants* § 48, at 919 (1940); Annotation, *Measure of Damages for Breach of Covenants of Title in Conveyances or Mortgages of Real Property*, 61 A.L.R. 10, 24 (1929). Damages also include interest, cost and expense incurred by the covenantee in unsuccessfully defending title. We have followed this rule, holding that the measure of damages for breach of warranty of title to real estate is the loss sustained by the grantee, not to exceed the amount of consideration received by the grantor. *Churchman v. Wilson*, 204 Iowa 1017, 1019, 216 N.W. 726, 728 (1927); *Boice v. Coffeen*, 158 Iowa 705, 712, 138 N.W. 857, 860 (1912); *Swafford v. Whipple*, 3 Greene 261, 264 (Iowa 1851).

■ Plaintiffs urge us to follow the rule we adopted in *Foley* to increase the amount of recovery because of bad faith or wrongful acts by the party who either refused or failed to convey the real estate. We think *Foley* and its progeny are distinguishable. These cases are actions for breach of contract to convey real estate, not actions for bad faith. Proof of the vendor's bad faith in inducing the contract allows the vendee to expand the recoverable damages. It does not create a separate action for bad faith.

Donohue was neither the vendor nor a party to the contract to convey. After the sale contract was entered into by the Woods and Schmitts and over fifty percent of the cash had been paid, Donohue signed a personal covenant guaranteeing title. This did not induce plaintiffs to enter into their contract with Schmitts. We have not been cited to, nor do we know of, any authority providing that a mere guarantor of good title may be assessed greater damages by proof of his bad faith. We find no error on this issue.

■ B. *Damages against Johnson.* Plaintiffs maintain that the trial court inappropriately limited damages recoverable from defendant Johnson under the attorney malpractice claims. They complain the order adjudicating law points was erroneous in applying the same measure of damages under all theories they advanced. They also object to the trial court's refusal to submit claims for loss of time and for rents after 1977.

We need not consider plaintiffs' claims because they did not preserve error except as to their objection that the fair market value of the land should have been established at the date the plaintiff was dispossessed. We reject that contention. They certainly raised other concerns in pretrial motions. However, in their appellate brief, they do not refer to specific objections made at trial to the instructions. In our examination of the record, we find that plaintiffs objected to the failure to include these damages in their fraud action. However, their present challenges to the negligence instructions or the instructions on Johnson's breach of contract were not addressed. Because of a lack of preservation of error, we do not reach the merits of this complaint.

■ Johnson also attacks the damage assessment. He claims that the damages assessed against him should have been limited to those expressly indicated in the jury's interrogatory answer of $13,692.25, reduced by the 35% of the negligence attributed to plaintiff Donald J. Woods. There is no merit in this contention. That interrogatory was limited to damages assessed against Johnson for negligence. It does not speak to damages for his breach of implied warranty under the contract theory.

■ Johnson further complains that the court should not have submitted damage items for the cost of defending title, rents paid and improvements. He points to the court's earlier rule 105 ruling striking these items of damages. As we have ex-

plained, the court may correct erroneous rulings. The pertinent question is whether these items should have been submitted to the jury. Without further comment, we have reviewed Johnson's claims and find no merit in them.

The measure of damages recoverable for breach of contract is the amount shown to have resulted from injuries which may reasonably be considered as arising from the breach of contract itself, or as may reasonably be supposed to have been in contemplation of the parties, at the time of contracting, as the probable result of the breach. *See* 5 *Corbin on Contracts* § 1007, at 70 (1964); *New Hampshire Ins. Co. v. Christy,* 200 N.W.2d 834, 844 (Iowa 1972); *Gildner Bros. v. Ford Hopkins Co.,* 235 Iowa 191, 198, 16 N.W.2d 229, 233 (1944).

At the time Johnson contracted with the plaintiffs to examine the title and assist them in closing the real estate contract, we believe that it could reasonably be supposed that plaintiffs would take possession of the property. If there was a failure of title, it was reasonably foreseeable that plaintiffs could be required to pay the rightful owner damages of rent for the use of the land. It was foreseeable that they might make improvements and not recover this expense. It was also foreseeable that they might be required to incur expenses in defending title to the real estate. Evidence was admitted on these damages. There was no error in submitting these items of damage for jury consideration.

■ C. *Additur on Rent Paid.* On August 2, 1979, the district court entered judgment in favor of Mosers against Woods for $51,065.51 with interest for the rental value of the property for the crop years of 1975, 1976 and 1977. However, the court did award the 1977 corn crop to Woods. We affirmed in *Moser II.* 312 N.W.2d at 901. At plaintiffs' request, the trial court in the instant case submitted such rent paid as a damage item and stated the full amount in its instruction. On its verdict form, the jury returned an award of $12,500.

Plaintiffs maintain that the court instructed the jury to award $51,065.51 or nothing. The instruction is not a model of clarity. In its post-trial ruling, the trial court disagreed with plaintiffs' interpretation of the instruction and refused plaintiffs' request to enter judgment for the full amount of the rent.

In this case, an all-or-nothing instruction would have been wrong. The trial court also instructed the jury on mitigation of damages. In determining the damages plaintiffs incurred by paying rent, the jury should be allowed to take into account the evidence concerning plaintiffs' use and income from the land for three years. They received the crops and their profits for each of these years. It appears that the jury took this into consideration in determining the amount of plaintiffs' loss. This case is similar to one of our earlier cases in which the jury did not award the full amount of the claim as set out in the instructions, but we held that it had properly determined the case. *Haldane v. Town of Arcadia,* 70 Iowa 462, 464, 30 N.W. 802, 803 (1886). We believe the trial court properly denied plaintiffs' post-trial motion on this issue.

■ D. *Purchase Price.* The trial court instructed the jury that the measure of damages "for the loss of the farm by the Woods, if any you find, is $90,000, the amount of the purchase price as shown by the evidence." On its special verdict form the jury found no damages. In their post-trial motion and on appeal, plaintiffs urge that they are entitled, at a minimum, to the return of the full purchase price as a matter of law. We agree, in part.

The undisputed evidence is that the plaintiffs paid $90,000 for the purchase of this farm and that following *Moser III,* they have been returned the sum of $32,969.13 on April 26, 1982. They borrowed money from the Federal Land Bank and mortgaged the farm to finance the purchase. Further, they admit that they are currently litigating with Federal Land Bank the issue of whether they owe this loan.

The fact that plaintiffs have not paid off their loan does not excuse defendants Do-

nohue and Johnson from any obligation they might owe to reimburse the purchase price of the farm. The fact that Woods secured a loan which they have not paid, and possibly may not pay, has not been claimed by defendants as a legal defense or a set-off to their obligation to Woods. It is not a proper defense or set-off because the loan is an obligation separate from the purchase of the farm. Plaintiffs paid for the farm whether it was cash from their own funds, a gift or from a loan.

On the other hand, Woods' receipt of money from the Moser–Thorp litigation should be credited to the purchase price. This money resulted from the Moser purchase price for the farm. By the time the money became available, the Schmitts had been paid by the Woods and the liens against the premises had been satisfied. The Schmitts were not entitled to the money because they had been fully paid the selling price and transferred their interest in the farm to Woods. When the court returned this $32,969.13 to Woods, it was a partial return of Woods' $90,000 purchase price.

The trial court should have instructed the jury that the damages for this item were $57,030.87 as a matter of law. After the jury returned verdicts of liability against Johnson and Donohue, the trial court should have entered judgment in this amount. Interest is discussed later.

In making this determination, we recognize that neither a trial court, nor we on appeal, can increase a verdict merely because we believe that the jury in its fact-finding has returned an amount less than it should be. In this case, the jury has determined the liability of Donohue and Johnson. We only state the amount of damages that should have been determined as a matter of law.

E. *Interest.* All parties complain about the court's award of interest. Their concerns relate solely to pre-filing interest and not the time period after commencement of the action.

Plaintiffs filed a post-trial motion requesting the judgment be corrected by adding pre-litigation interest. First, they maintain that they were entitled to recover the interest paid on their various loans, including interest paid Federal Land Bank on their purchase price loan, as a loss sustained from the breach of contract actions against both Donohue and Johnson. This constitutes a request that interest expense be recoverable as an element of consequential damage flowing from the respective breach of contract actions. *See Nachazel v. Miraco Mfg.*, 432 N.W.2d 158, 161–62 (Iowa 1988). This decision could have only been made by the factfinder, the jury, in their causation determination.

Plaintiffs failed to object to the jury instructions which did not include such a theory of recovery. Apparently, plaintiffs assumed the trial court had authority to add interest expense to the judgment after the verdict was returned. We need not decide whether interest expense is a proper consequential damage in this case.

This is unlike a request for statutory interest upon money owed under Iowa Code section 535.2. When a party requests statutory interest, the court may either submit the interest question to the jury under proper instruction or may, on proper motion, enter judgment for the interest after the verdict. *Mallory v. Jurgena*, 250 Iowa 16, 22, 92 N.W.2d 387, 391 (1958). If the jury determines that the sum is due and the amount is liquidated, interest accrues as a matter of law under the statute. The court does not invade the factfinding process by calculating the interest and adding it to the award. However, the request for interest paid as a part of consequential damages presents a fact question. Under the latter situation plaintiffs have waived error by failing to object to the instructions.

Woods also requested statutory interest at the rate of five percent for money due on the settlement of accounts when the balance is ascertained pursuant to Iowa Code section 535.2(1)(d) (1987). Following a post-trial motion, the trial court awarded interest on the judgment for rent from August 1, 1979, until the commencement of the action and on the improvements from

the time they were completed until the commencement of the action. The trial court refused to add interest to the purchase price of $90,000 because the jury had returned no damages on this item. It also rejected interest on the cost of defending title because the amount was not liquidated prior to the filing of this case. Both Donohue and Johnson maintain the court erred in allowing pre-commencement interest for rents and improvements. They urge the sums were not liquidated until the jury had ascertained the entire damage. Plaintiffs, on the other hand, assert entitlement to interest on all of the items requested.

We have followed the rule that interest runs from the time money becomes due and payable and, in the case of unliquidated claims, from the date they become liquidated. *Mrowka v. Crouse Cartage Co.,* 296 N.W.2d 782, 783 (Iowa 1980). Liquidation ordinarily occurs the date of the judgment. *Id.* An exception to the unliquidated claim rule exists when the damage is complete at a particular time, in which case interest runs from that time, although the damage has not been fixed in specific sum. *Id.*; *Lemrick v. Grinnell Mut. Reinsurance Co.,* 263 N.W.2d 714, 720 (Iowa 1978); *Bridenstine v. Iowa City Elec. Ry. Co.,* 181 Iowa 1124, 1136, 165 N.W. 435, 439 (1917). The trial court correctly concluded the damage was complete on the rent and cost of improvements and incomplete on the cost of defending title. The purchase price damage was also complete. Upon remand, we require interest be computed at the rate of five percent from the date the first $50,000 was paid, and then on the full $90,0000 from March 24, 1975, until the filing date of this action.

Donohue and Johnson contend that interest may not be allowed until the entire damage is complete. Citing *Vorthman v. Keith E. Myers Enterprises,* 296 N.W.2d 772, 778 (Iowa 1980), they maintain that there may be no piecemeal computation from the various dates separate items of damages become complete. In *Vorthman,* the damages arose out of the breach of warranty on the sale of feeder pigs, including claims for pigs which died, pigs which

lived, feed, labor and veterinary services. *Id.* at 776. This is similar to a personal injury claim where there are continuing damages for items such as medical expense and loss of income. *See Mrowka,* 296 N.W. 2d at 784. A piecemeal determination of interest in such case presents accuracy concerns and is problematic for the court. In the present case, however, the separate items of damages are clear-cut and readily ascertainable. Under these circumstances it would be inequitable not to make the rather easy interest computation from the date that each loss is ascertainable. Consequently, we reject defendants' claims.

F. *Punitive Damages.* Although punitive damages were requested against both Donohue and Johnson, the trial court only submitted the issue as to Donohue under plaintiffs' fraud theory. Because we have held that Donohue was entitled to a directed verdict on the issue of fraud due to his establishment of the statute of limitations defense, we must also set aside the accompanying punitive damages.

On appeal, plaintiffs do not claim, and we do not address whether they were entitled to instructions for punitive damages arising out of the breach of covenant action against Donohue. However, plaintiffs do claim that they were entitled to punitive damages against Johnson. We disagree. An award of punitive damages is permissible where defendant was guilty of malice, fraud, gross negligence, or an illegal act. *Pogge v. Fullerton Lumber Co.,* 277 N.W. 2d 916, 918–20 (Iowa 1979). In considering whether punitive damages should be permitted, the nature of the conduct is more significant than the legal label which is attached to it. *Pirkl v. Northwestern Mut. Ins. Ass'n,* 348 N.W.2d 633, 636 (Iowa 1984). There is no evidence of malice, fraud or an illegal act on the part of Johnson. His conduct cannot be characterized as outrageous. At most, the evidence shows that Johnson merely made a mistake in a title opinion. Therefore, an award of punitive damages would not be proper.

VII. *Summary.* We have reviewed all issues raised, whether specifically discussed or not, and in summary order the

following. We affirm the judgment against Richard Schmitt, Marguerite Schmitt, Johnson and Donohue for $49,976.71 as corrected by the trial court in its post-trial ruling filed March 23, 1987. On remand, the court shall further correct the judgment by increasing it by the sum of $57,030.87 plus pre-filing interest at the rate of five percent on the sum of $50,000 from January 31, 1975, to March 24, 1975, and on the sum of $90,000 from March 24, 1975, until September 1, 1981. The trial court should allow interest during the filing period at the rate of ten percent on the entire judgment. We reverse the judgment against Donohue for punitive damages in the sum of $37,500.

The appendix printing costs submitted by the Woods pursuant to Iowa Rule of Appellate Procedure 16(c) are to be limited to the actual $2,016.84 paid for reproduction.

Appeal costs are assessed 4/9ths to Woods, 4/9ths to Johnson and 1/9th Donohue.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.